RYAN, *Appellant*, v. YOUNG.

**This Court** approves the finding of the court below that the deed assailed in this case for fraud against creditors, was *bona fide.*

*Appeal from Jackson Special Law and Equity Court.*—HON. R. E. COWAN, Judge.

AFFIRMED.

*Comingo & Slover* for appellant.

*Buchanan & Black* and *Jas. F. Mister* for respondents.

NORTON, J.—Plaintiff, who was a judgment creditor of defendant, Young, commenced this suit in the special law and equity court of Jackson county, to set aside a deed executed on the 25th day of January, 1871, by said Young, conveying to defendant, Willock, his interest in a certain tract of land in Jackson county. It is alleged in the petition that this deed was made in pursuance of a conspiracy entered into between defendants Young and Willock to defraud the plaintiff and other creditors of said Young, and that said Willock received said deed with full knowledge of said Young's fraudulent purpose. The answer put in issue the averments of the petition, and on the trial judgment was rendered for the defendants, from which plaintiff has appealed on the ground that the judgment is against the law and evidence.

It appears from the record that defendant Young, in August, 1868, purchased of one Hughes, who was engaged in the grocery business, his stock of goods, and commenced business in Independence; that he gave Hughes his note for $1,000, the purchase price of said goods, and to secure its payment executed a deed of trust conveying his one-third interest in 120 acres of land in Jackson county. It also appears that on the 24th day of May, 1870, Young executed a second deed of trust conveying his interest in

said land to secure a note executed by him to one Roberts for $850; that in this deed Josephine Young, the sister of defendant Young, joined, conveying her interest also for the like purpose; that said Josephine subsequently, in December, 1870, intermarried with the defendant Willock; that the sums of money secured by these deeds were put in defendant Young's business. It further appears that Young, who had been raised on a farm, without experience in mercantile pursuits, was unsuccessful in the enterprise in which he had embarked, and contracted more liabilities than he was able to pay; that on the 23rd day of January, 1871, he sold and conveyed his interest in said land to defendant Willock for the consideration of $1,000, his interest being one-third, subject to the life estate of his mother in the premises and incumbrances above mentioned.

Willock in his evidence states that at the time of the purchase he paid Young $125 and assumed the payment of the note of Young to Roberts then about $875; that he paid the interest on the Roberts note the 2nd day of March, 1871, and got an extension of time, paid interest after that and in March, 1872, paid the balance on said note, it having been credited in February, 1871, with $150 worth of corn raised on the farm in 1870, which the parties interested agreed he might apply in that way; that he borrowed money from Miss Wallace with which to make the payment. He also testifies that he paid the balance on Hughes note, $700 with interest, through Mr. Van Note. This evidence as to payments was corroborated by Young, Roberts. Hughes and Wallace. It thus appears that the consideration for the land was fully paid by defendant, and that it went to the payment of Young's debts and $125 paid to Young, which he swears he paid on his debts, and that this statement is corroborated by Hughes, who states that about the time of the sale to Willock, Young paid him about $200 on his note; $875 was paid to Roberts, and between $700 and $800 paid to Hughes.

The sums thus paid, about $1,800, were a fair price for

the land, one witness testifying that it was hard to tell what it was worth incumbered with the life estate of Young's mother; that freed from that the whole tract would be worth about $7,000; that Mrs. Young was old and infirm and the value would not on that account be greatly affected. It appears that Mr. Hughes, whose debt, then less than $1,000, was secured by a deed of trust on defendant's interest, was not satisfied with it as a security, and wished other security. Viewing this transaction in the light of the above facts, and we are unable to perceive any fraud either on the part of Young or Willock to cheat the creditors of Young; the property was sold for a fair if not for a full price, and the consideration paid, so far from being diverted from creditors, went to the liquidation and payment of Young's debts.

To impeach the sale for fraud (it having been made for a valuable consideration) it was necessary for plaintiff to show that Young's purpose in selling the land was to defraud and cheat his creditors, and that defendant Willock participated in the fraudulent purpose. *Gentry v. Robinson*, 55 Mo. 260; *Henderson v. Henderson*, 55 Mo. 555; *Shelley v. Boothe*, 73 Mo. 74.

It is contended by counsel that at the time Young sold the land to Willock he also sold his stock of groceries, and it is earnestly urged in argument of counsel that this sale as well as the sale of land was in fraud of creditors. The argument is mainly based upon the fact that there was no invoice of the goods taken, but they were sold in a lump for $1,263.15. Willock testified that before purchasing he had examined the stock of goods and that after bartering with Young, and trying to screw him down, the price of $1,263.15 was arrived at and agreed upon by splitting the difference between them; that he paid Young in cash about $40 and for the balance gave two notes, one for something less than $600 due one day after date, and the other for something over $600 payable in six months.

It appears from the evidence that this sale was made

on Monday, and on the same day and after it was made Wm. Van Note, who had during the preceding week been negotiating with Young for the purchase of the goods, called to see Young, and while explaining to him why he had not called on the previous Saturday, as he had agreed to do, was informed by Young that he had sold to Willock, and for him to see Willock, and that he could get the stock on the same terms he had agreed to let him have them; that after some conversation with Willock, he agreed to let him have the goods on the same terms at St. Louis cost less ten per cent with freight added, informing him in the back room of the store that he had bought and paid for them; that they commenced taking an invoice, and a constable with a claim against Young amounting to about $300 saying that if it were not paid he would attach the goods, it was agreed that it should be paid. Willock gave an order on Van Note for the amount, which was deducted from the amount of the invoice, and which was accepted by Van Note and afterward paid; the amount of Willock's order was credited by Young on Willock's note to him due one day after date; the invoice amounted, according to the evidence of Van Note, to about $1,100, and according to the evidence of Willock to about $1,180. The invoice of the goods was completed about twelve o'clock at night of the day on which it was commenced, the parties expressing anxiety to have it completed on that day; Van Note after deducting the amount to be paid on the claims against Young in the hands of the constable, gave his note to Willock for the balance. Willock testifies that he paid the balance of the note given Young, due one day after date, the day after the purchase, and that the note payable in six months was paid by him in the summer of 1871, payments being made to Barnes, a brother-in-law of Young and also a creditor on account of money loaned Young, and which Young swears was procured to pay plaintiff in this suit.

Looking at this transaction in the light of the facts,

3—79

Ryan v. Young.

whatever of suspicion as to its fairness and good faith may be deduced from the indebtedness of Young and the kinship of the parties disappears in the face of the direct evidence of Young and Willock as to the application of the proceeds of these sales to the payment of Young's debts, and this evidence is not overcome by the fact so strongly urged by counsel, that the goods were bought by Willock without being invoiced for the sum of $1,263.15, as the invoice taken when they were sold to Van Note shows that the price paid by Willock was slightly in excess of the amount as ascertained by the invoice. Willock testified that he had been in the mercantile business as a clerk since he was fifteen years old in St. Louis and Independence, that while in St. Louis he received a salary of $90 per month, and while in Independence $50; that his brother paid him some money in 1871, that he borrowed some from his mother, and that this money and his salary were applied to the payment of the second note given Young. This evidence as to his having means was corroborated by Mr. Wallace for whom he had been engaged, who testified that he cashed a check from Willock's mother for between one and two hundred dollars, and that he owed Willock $400. If credence is to be given to the evidence of Young, who was plaintiff's witness, and that of Willock, corroborated as it was, the transaction sought to be impeached was a fair one, and free from fraud. The trial court which had these witnesses before it, gave credence to their evidence, and there is nothing in the record which would justify us in holding otherwise than it did. Judgment affirmed. All concur.