McNamara v. St. Louis Transit Co.

## McNAMARA, by Curator, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### Division One, June 20, 1904.

1. **DAMAGES: Punitive: Definition of Malicious.** To entitle plaintiff to punitive or exemplary damages, the act complained of must have been maliciously done, and it is necessary to tell the jury what is meant in law by the term "malicious" if that term is used in the instructions. And in this case it is held that an instruction which stated that "by the term 'malicious' is not meant spite or ill-will, but the intentional doing of a wrongful act, without just cause or excuse," properly defined the word.

2. ———: ———: **Measure of Damages: Maximum Fine.** The fact that the maximum fine that could be imposed on a conductor for kicking off of a car a messenger boy thirteen years old, would be $100, is no reason for holding that an assessment of $750 punitive damages was excessive.

3. ———: ———: **Excessive.** Plaintiff, a telegraph messenger boy, thirteen years old, got upon the platform of defendant's car, prepared to pay his fare, and was unable to go inside because of the crowd on the platform, and while standing there the conductor pushed by the other passengers and kicked him on the breast, producing bruises and causing the boy to cry. He would have fallen off but was caught by some of the other passengers, then entered the car, paid his fare, and at the trial was awarded $250 actual and $750 punitive damages. The conductor testified that he had been annoyed by boys jumping on the car, and that he went on to the platform to kick at another boy who was stealing a ride, but missing him, touched the defendant. *Held*, that the act of the conductor was intentional, lawless, contemptible and cowardly, and children and women being the special objects of the law's protection, there is nothing to show that the damages are so great as to manifest misconduct or partiality on the part of the jury.

4. ———: ———: **Liability of Master.** It is hard to hold the master to pay for the wrongs of such malicious servants, but since the master makes it possible for such things to happen, it would be harder for the public to have to suffer such wrongs without having adequate redress.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough*, Judge.

AFFIRMED.

*George W. Easley* with *Boyle, Priest & Lehmann* for appellant.

(1) The court erred in giving the fourth instruction for plaintiff. It was nowhere submitted to the jury by any instruction in this case to find that the act of the conductor was wantonly done, or that it was for the purpose of oppressing the plaintiff, or in disregard of his rights. They were told to give vindictive damages if the alleged assault was "made with malice," that is, as defined in the instruction "without just cause or provocation." In other words, every unlawful act authorizes vindictive damages without reference to the motive of the party inflicting the injury. The court should have submitted to the jury to find whether the conductor's acts were wanton, willful, or in reckless disregard of the plaintiff's rights. 2 Shearman & Redfield on Neg. (5 Ed.), sec. 748. This instruction bases the right to punitive damages not upon wantonness or malice, but wholly upon wrongful act—not upon wrongful motive. Haines v. Schutz, 50 N. J. L. 481, 14 Atl. 488; cited with approval in Railroad v. Prentice, 147 U. S. 101; Kennedy v. Railroad, 36 Mo. 364; Dorsey v. Railroad, 83 Mo. App. 543; State v. Jungling, 116 Mo. 165; Railroad v. Quigley, 21 How. 202; 12 Am. and Eng. Ency. Law (2 Ed.), 624; 12 Id. 24; Ickenroth v. Railroad, 77 S. W. 166. (2) The verdict of the jury is so excessive, both as to the actual and punitive damages, as to force the judicial

mind to the conclusion that it was the result of passion and prejudice against the defendant. Whenever that appears, it is the duty of this court to reverse the judgment, unless the judgment be remitted to a reasonable sum. Chitty v. Railroad, 166 Mo. 435.

*Paul V. Janis* and *Wm. R. Gentry* for respondent.

(1) Plaintiff's instruction 4 was correct. The definition of malice therein contained has frequently met the approval of this court and the courts of appeals in this State. The instruction was copied almost word for word from an instruction in the case of Canfield v. Railroad, 59 Mo. App. 365. Goetz v. Ambs, 27 Mo. 28; Buckley v. Knapp, 48 Mo. 152; Lyddon v. Dose, 81 Mo. App. 71; Ickenroth v. Railroad, 77 S. W. 162; Trauerman v. Lippincott, 39 Mo. App. 478. (2) The verdict is not excessive either as to actual or punitive damages. The Chitty case, cited by appellant's counsel, can have no application here. The facts in that case were utterly different, the amount of judgment was fifteen times as much as in the case at bar, and that was merely a negligence case, while the case at bar is purely a case of malice. Black v. Railroad, 72 S. W. 559; Malloy v. Railroad, 73 S. W. 159; Pauck v. St. L. Dressed Beef & P. Co., 166 Mo. 646; Parks v. Railroad, 77 S. W. 70.

MARSHALL, J.—This is an action for one thousand dollars, actual damages and fifteen hundred dollars punitive damages, sustained by the plaintiff, a minor of the age of thirteen years, while a passenger on an Olive street car of the defendant's line, in the city of St. Louis, on February 26, 1902, caused by the assault of the conductor of the car upon the plaintiff, by kicking the plaintiff on his left side, over his heart. The answer is a general denial. There was a verdict for the plaintiff for $250 actual damages and $750 punitive damages, and the defendant appealed.

The facts are these: The plaintiff, a lad of thirteen years, was a messenger for the Postal Telegraph Company. On the day in question about half past three p. m. he boarded defendant's car at thirteenth and Olive streets, intending to go to Jefferson avenue, as a passenger on the car, having the money to pay his fare. Several people got on the car ahead of him. When he had gotten on to the step of the car and as he was about to get on to the rear platform, and while he was waiting for the other passengers to move forward so he could get up on to the platform, and while the car was in motion, the conductor, who had been inside of the car, came out on to the rear platform, passed by the passengers who were standing on the platform, and without a word, kicked the boy in the left side in the region of the heart. The kick caused the boy to let go his hold on the rail of the car, his right foot touched the ground, but someone caught him and lifted him back on to the car and ultimately he got into the inside of the car, paid his fare and rode to Jefferson avenue. The kick produced a bruise, and the pain caused the boy to cry.

The conductor admits that his foot touched the boy, but he says that he had been annoyed by boys jumping on to the car, and there was another boy who jumped on to the car and was stealing a ride and he went out on the back platform and kicked at the other boy, he jumped off the car and avoided the kick, and his foot swung around and struck the plaintiff. The case is here because the constitutionality of the nine-jury law was raised in the trial court, and the verdict was rendered by only ten jurors. Nothing further need be said of that question, however, as the point has been set at rest by this court. The defendant does not question the right of plaintiff to recover compensatory damages, but says that the actual damages allowed by the jury are so grossly excessive as to show passion, prejudice, or misconduct of the jury, and that the plaintiff is not entitled to recover any exemplary damages, and that if

he was, the instruction given for the plaintiff on the measure of damages is erroneous. The instruction complained of is as follows:

"4. The court instructs the jury that in assessing the plaintiff's damages, if they find for him, they are not limited to the physical injury inflicted, or humiliation or disgrace caused plaintiff (if any) by the said act of the said conductor, but, in addition thereto, if they find the assault of plaintiff by said conductor was malicious (and by the term 'malicious' is not meant spite or ill-will, but the intentional doing of a wrongful act without just cause or excuse) they may allow such further damages, known in law as 'exemplary', as will be a punishment to defendant and a wholesome warning to others."

## I.

The gist of the defendant's contention is that the facts do not warrant the giving of an instruction allowing exemplary damages, and if they did, the instruction given, while good as far as it goes, is erroneous in not more clearly defining what is necessary to constitute "the intentional doing of a wrongful act without just cause or excuse," and that the compensatory damages allowed are excessive, as also are the exemplary damages.

It is not denied that the instruction given is the "conventional definition of malice," usually given in cases of this character which are founded upon malice. But it is urged that the right to recover exemplary damages does not flow from every wrongful act, but there must be a wrongful motive or intent, or the act must have been conceived in a spirit of mischief or of criminal indifference to the rights of others, or mere wanton, willful or reckless disregard of plaintiff's rights.

It is true that to entitle the plaintiff to punitive or exemplary damages the act complained of must have been maliciously done, for the law does not punish civ-

illy a person for doing an unintentional wrong. It compensates the persons wronged, but inflicts no punishment upon the offender. This being true, it is necessary to tell the jury what is meant in law by the term "malicious," for the legal meaning is much broader than the meaning the average layman would ascribe to the term and in a large degree it is a different meaning. The average layman would believe that "malicious," means ill-will, spite, hostility towards the other party. This is not the legal meaning. Those feelings may or may not be present in the legal meaning of the term. The legal meaning of the term is "the intentional doing of a wrongful act without just cause or excuse." This has been the rule of law in this State ever since the decision in Goetz v. Ambs, 27 Mo. l. c. 32, where it was expressly held that instructions were properly refused because they were predicated upon the theory that the act must have been deliberately done with ill-will and hostility towards the plaintiff, and the rule was laid down that to warrant a recovery of exemplary damages the act must have been willfully or intentionally done, the court saying (l. c. 33), "The term malice imports, according to its legal signification, nothing more than that the act is willful or intentional; and when used to qualify the character of a trespass, it is only employed to distinguish it from that class of injuries which one person may inflict upon another without the intention to do harm, but for which he is responsible, because the act is not unavoidable." The court adopts the definition of the term "willfulness," given by the Supreme Court of the United States in United States v. Taylor, 2 Sum. 586, as follows:—"Willfulness —a wrongful act, done intentionally, without just cause."

In Trauerman v. Lippincott, 39 Mo. App. l. c. 486, an instruction in all essential respects like the one here under consideration was drawn in question, and speak-

ing of it, the Kansas City Court of Appeals, per ELLISON, J., said:

"The instruction defining malice is in keeping with the case of Goetz v. Ambs, 27 Mo. 28, and that case is not, as might at first appear, so irreconcilable with the more recent rulings of the Supreme Court on the question in the cases of Franz v. Hilterbrand, 45 Mo. 121; Engle v. Jones, 51 Mo. 316; Graham v. Railroad, 66 Mo. 536; Seibel v. Siemon, 72 Mo. 526; Bruce v. Ulery, 79 Mo. 322; Brown v. Plank Road Co., 89 Mo. 152; Welsh v. Stewart, 31 Mo. App. 376; Prueitt v. Cheltenham Quarry Co., 33 Mo. App. 18.

"From a consideration of these cases it would appear that in actions in the nature of trespass there must be, in order to justify exemplary damages, some element of wantonness or bad motive. There need not be any personal ill-will or spite towards the party injured, for the wantonness or reckless, lawless spirit may be displayed in a trespass against the property of a stranger. Malice may be of a general nature, let the injury fall where it may. [State v. Wieners, 66 Mo. 18.] The instruction given following Goetz v. Ambs, supra, states that malice 'means the intentional doing of a wrongful act without just cause or excuse.' This means that he not only intended to do the act which is ascertained to be wrongful, but that defendant knew it was wrongful when he did it. This is as it has always been understood in cases of homicide. Understood in this way, Goetz v. Ambs is not out of line with the foregoing decisions requiring the act to partake of wantonness or a reckless disregard of the rights of others. For, if one intentionally does a wrongful act and knows at the time that it is wrongful, then he does it wantonly, by which word I understand is meant, causelessly, without restraint and in reckless disregard of the rights of others. When one intentionally commits a wrong, he does it from an evil spirit and bad motive. Good mo-

tive or spirit does not impel the commission of willful wrong.''

Goetz v. Ambs, 27 Mo. 28, has been cited and approved in the following cases: Freidenheit v. Edmundson, 36 Mo. l. c. 231; McKeon v. Railroad, 42 Mo. l. c. 87; Franz v. Hilterbrand, 45 Mo. l. c. 123; Buckley v. Knapp, 48 Mo. l. c. 161; State v. Jungling, 116 Mo. 165. The term ''intentionally'' done covers all that has ever been or could ever be claimed as necessary to indicate to the jury that the defendant knew that it was wrong, knew that he had no just cause or excuse for so doing, and hence did it willfully, and wantonly and in reckless disregard of the rights of the other party.

Webster's International dictionary defines ''intentionally'' to mean: ''In an intentional manner, with intention; by design; of purpose;'' and it defines ''intentional'' to mean, ''Done by intention or design; in tended; designed; as, the act was intentional, not accidental.''

In Buckley v. Knapp. 48 Mo. l. c. 161, an instruction was given substantially like the one under consideration, and this court, per WAGNER, J., speaking of the instruction, said: ''Whilst malice in its common acceptation means ill-will towards some person, in its legal sense it is defined to be a wrongful act done intentionally, without legal justification or excuse; and in ordinary actions for slander or libel, malice in law is sufficient, and it is to be inferred from the publication of the slanderous matter without such justification or excuse. In most instances where an injury is committed against the person or property of another, the actual intention of the author of the mischief is immaterial. The law considers every one whose neglect, carelessness and want of due regard for the rights of others occasions injury to them equally culpable and bound to make reparation to the extent of such injury as one who willfully does the mischief.''

In Gildersleeve v. Overstolz, 90 Mo. App. l. c. 532, the St. Louis Court of Appeals, per GOODE, J., said: "This was undoubtedly a case which warranted and even called for an award of punitive damages. The appellant's conduct was lawless, high-handed, oppressive and in utter disregard of respondent's rights." And the same remark applies with even greater appropriateness to the facts in judgment here.

The defendant asked and the court gave an instruction predicated upon the defendant's theory of the case, that the conductor accidentally kicked the plaintiff while trying to eject another boy from the car, who was stealing a ride. The jury, therefore, had the two theories before them, one that it was accidental, and the other that it was intentional. They found the fact to be as the plaintiff claimed. They believed that the injury was intentionally inflicted. If the plaintiff's version is true, the act was wanton, willful, intentional, brutal, criminal and deserved severe punishment. If the conductor honestly believed that the plaintiff was trying to steal a ride, and intended to kick him off of a moving car, the act was wanton, willful, in utter disregard of the rights of the plaintiff, inhuman and without legal justification or excuse. The law permits a common carrier to eject trespassers from its trains, but common humanity revolts at the idea of kicking even a trespasser from a moving train. And for a grown man to undertake to kick a boy of thirteen years off of a moving car, even though he be a trespasser, is not only unlawful, but it is inhuman, cowardly and contemptible. It is, of course, hard that a master should have to pay for such wrongs of such servants, but it would be harder still for the public to have to suffer such wrongs without having adequate redress. The master makes it possible for such things to happen by putting such servants in a position where they can do such wrongs. The law protects the master in all his rights, but it likewise affords

redress for wrongs of the master done by his servants to the public.

The plaintiff in this case was a passenger and not a trespasser. His youth called for greater protection from the carrier than if he had been old enough and strong enough to take care of himself. If he had been a man it could not be doubted that the conductor would not have kicked him intentionally or accidentally. The conduct of the conductor in any view of the case was inexcusable and unlawful. It was a proper case for exemplary damages, and the instruction given properly declared the law. The actual physical injury was not very considerable, although the blow was in a very vital part of the body, and it is most fortunate that the injury was no greater. The defendant contends that if it was a criminal prosecution, the maximum fine could not exceed one hundred dollars, and upon this predicate argues that the damages assessed are excessive. But this is not a safe criterion to go by. A comparison of the fines allowed in criminal cases with the amount of recovery allowed in civil cases for the same wrong, shows that there is a great disparity. But this is not surprising, for in the first place, the fine is the punishment which the State inflicts, while the civil recovery is, generally, allowed as a compensation to the injured party, and in the next place, the law allows both remedies to be resorted to, and neither is a bar to the other.

If the plaintiff was a prominent citizen, the recovery would not be esteemed too large by any one. If the plaintiff was any man's mother or wife or sister, it would not be esteemed too high. The plaintiff is a child. Women and children are the especial favorites of the law, as they are of all right thinking men, because they are generally helpless to protect themselves. Counsel for plaintiff have collated many similar cases where recoveries larger than the verdict in this case were upheld, and where the injury was no greater. Of these cases a reference to the following will suffice: In

Trauerman v. Lippincott, 39 Mo. App. 478, a recovery of $50 actual and $1,450 exemplary damages was sustained. In Canfield v. Railroad, 59 Mo. App. 366, a judgment for $2,000 was sustained. In Ruth v. Railroad, 98 Mo. App. 1, a recovery of one thousand dollars was permitted. In Railroad v. Baird, 54 L. R. A. 752, a judgment for $2,500 was affirmed. In Draper v. Baker, 61 Wis. 450, a verdict of $1,200 was allowed to stand. In Railroad v. Martino, 2 Tex. Civ. App. 634, a verdict for $2,000 was upheld. In Goddard v. Railroad, 57 Me. 202, a verdict for $4,850 was affirmed, although there was no physical injury inflicted. In Railroad v. Osborne, 97 Ky. 112, a verdict of $1,000 was approved. In Railroad v. Garrett, 8 Lea 438, a verdict for $2,000 was sustained. In Railroad v. Latimer, 28 Ill. App. 552, a verdict for $2,000 was upheld. In Craker v. Railroad, 36 Wis. 657, a verdict for $1,000 actual damages was approved, where the train conductor kissed the lady plaintiff five times on her lips.

The verdict and judgment are clearly for the right party. The assault was unprovoked and most reprehensible. The damages are not so great as to manifest misconduct or partiality of the jury, nor to offend against a judicial sense of justice and right. The judgment therefore is affirmed.

All concur.