BERNARD FINKE ET AL. v. WILLIAM T. BOYER ET AL., Appellants.—
56 S. W. (2d) 372.

Division Two, December 31, 1932.*

---

*NOTE: Opinion filed at April Term, 1932, September 28, 1932; motion for rehearing filed; motion overruled at October Term, December 31, 1932.

*A. E. L. Gardner* for appellant.

Taylor R. Young and Wurdeman, Stevens & Hoester for respondent.

FITZSIMMONS, C.—Defendant, William T. Boyer, appeals from a judgment of the Circuit Court of St. Louis County in the sum of $8,000. The judgment was against Boyer and defendant Raymond L. Kelly, and was rendered upon a verdict for $6,000 actual damages and $2,000 punitive damages. The action was for fraud and deceit charged to have been practiced upon the plaintiffs Bernard Finke and wife by defendants and one Morelock, now dead. Finke is a cobbler.

Defendants Boyer and Kelly are real estate dealers and traders. Morelock also dealt in real estate and mortgages. The gist of the complaint is that Finke and wife on May 7, 1926, sold their two-family flat building at No. 1125 Louisville Avenue, in the city of St. Louis, free and clear of encumbrances, and worth $15,000 for part cash and balance in promissory notes of the face value of $12,900 secured by a second deed of trust upon improved real estate at the northwest corner of Compton and Franklin Avenues in St. Louis. Plaintiffs charge that they employed defendant Kelly as their agent to sell their Louisville Avenue flat; that Kelly, acting in combination with defendant Boyer and Morelock, falsely and fraudulently represented to plaintiffs that the Franklin Avenue property was worth $68,000 and was ample security for the second deed of trust for $12,000 whereas in fact it had little, if any, value in excess of the first deed of trust amounting to $40,000; that they falsely represented to plaintiffs that the monthly income from rents of the Franklin Avenue property was $860, sufficient to enable the owner to pay all carrying charges and the monthly notes secured by the second deed of trust; that relying upon and under the inducement of these representations, plaintiffs conveyed their Louisville Avenue property to one Mary Stringer, whom the defendants and Morelock declared to be owner of the second deed of trust notes whereas defendant Boyer was the owner. Plaintiffs sued for $12,000 actual and $12,000 punitive damages, alleging that the acts and conduct of defendants and Morelock was willful and malicious.

I. Appellant Boyer complains that the trial court erred in refusing to sustain his demurrer to the evidence. Finke was of German birth and from the day of his arrival in this country he had no trade or business but that of mending shoes. He knew nothing about dealing in real estate. Morelock, a realty and mortgage dealer, was a neighbor of fifteen years acquaintance, and Finke and wife placed much faith in him. In 1925 the Finkes listed for sale their four-room flat at 1126 Louisville Avenue, St. Louis, with a real estate firm, for which Kelly worked at the time, and Kelly on behalf of his employers called on the Finkes. Boyer testified on cross-examination that he bought the property at Compton and Franklin Avenue for $55,200 in May, 1924, subject to a first deed of trust for $40,000 and paying the balance in cash. On direct examination he gave the purchase price as $54,000. Boyer took title to the property in the name of R. F. Pritchard, his brother-in-law, and, on September 15, 1925, he caused Pritchard to put on a second deed of trust for $15,000 made up of a series of thirty-six monthly notes. The first note was for $375 and each succeeding note was $1.50 less than the preceding note, except the last note, due thirty-six months after date, which

was for the full balance due, namely $4,522.50. In the same month, September, 1925, Boyer traded the Franklin Avenue property subject to the two deeds of trust amounting together to $55,000, to a man named Bachman, who gave Boyer in exchange a home place in St. Louis County. In this transaction Boyer appears to have placed a trading value of $68,000 on the stores and flats. The second deed of trust obviously was put upon the property in anticipation of the trade with Bachman. This second deed of trust, executed by Pritchard and retained by Boyer, originally for $15,000 and paid down to $12,900 was the security which in May, 1926, Boyer gave to the Finkes for their clear flat. The Franklin Avenue property encumbered with the second deed of trust in question, was improved with a two-story building, having on Franklin Avenue on the first floor a store and two living rooms and on the second floor a four-room flat and having on Compton Avenue sixteen four and five-room flats. The building was about forty-five years old. It had a frontage of 93 feet on Franklin Avenue and 180 feet on Compton Avenue, and had nine-inch side walls.

Kelly, having managed the Bachman deal and having knowledge that Boyer owned the second deed of trust on the Franklin Avenue property for $15,000 proposed to the Finkes that they trade their flat for that deed. They referred Kelly to Morelock. Kelly next suggested the trade to Boyer, and the latter asked Kelly to put his proposition in writing. Kelly then drew up a form of contract of exchange of the Finke flat for the second deed of trust, the sale price of the flat being fixed at $15,000 and the deed of trust being valued at the par value of the notes then outstanding namely $12,900 and the balance $2,100 being payable in cash. Mr. Finke went with Morelock and Kelly to look at the Franklin Avenue property. Finke remaining outside and the others going in to examine the premises. Morelock and Kelly, returning, informed Finke that the property was worth $68,000 to $70,000 and that the rents were $860 per month. The deal was praised as a highly advantageous one for the Finkes. Kelly said he would sell the deed of trust to his father, it was so good. He appealed to the community of religion between him and the Finkes and said he could never do wrong.

The Finkes, relying on the representations of Morelock and Kelly signed the contract under date of April 21, 1926. Kelly then took the contract to Boyer, and he had it signed by his sister, Mrs. Stringer, the putative owner of the second deed of trust. In fact Boyer was the owner and holder of it and he later made delivery of it at the office of the trust company where Boyer had his uptown office. The Finkes did not know at the time of the execution of the contract or at the time of the delivery of their deed to their Louisville Avenue property that Pritchard, the maker of the second deed of trust notes,

was Boyer's brother-in-law, or that Mrs. Stringer was Boyer's sister or that Boyer was the owner of the second deed of trust. Boyer held himself out as a friend of Mrs. Stringer, acting for her in the transaction.

The Finkes, Kelly, Morelock and Boyer met in the down-town office of the Boyer Land Company on May 7, 1926, to consummate the contract of exchange, made on April 26th. Before the Finkes signed the warranty deed to their Louisville Avenue property, Boyer informed them that the Franklin Avenue property was worth $68,-000 to $70,000 and that the rents were $860 per month. The Finkes, believing this statement, signed the warranty deed which ran to Mrs. Stringer. Boyer acting as a notary, took their acknowledgment. The rent collector testified that the rents for April, 1926 were $830.81; May, $667.36; June, $705.25; July, $740.38 and August, $695. This is an average of $727.76 per month. Boyer himself testified that the rents collected in June, 1925, amounted to $730, reduced to $484.55 by repairs, and that other monthly rents were: July, 1925, $672; September, 1925, $600; January, 1926, $530. Kelly began negotiations with the Finkes soon after the last named month. A professional appraiser testified that in April, 1926, the Louisville Avenue flat of the Finkes was worth a little above $14,000 and that the Franklin and Compton Avenue stores and flats were worth $57,-200. As has been said, this property at the time of the trade was subject to encumbrances of $52,900 of which $12,900 was the second deed of trust.

After the deed had been executed, the parties went to the office of a trust company where Boyer kept the second deed of trust. There the Finkes delivered their warranty deed and Boyer delivered the second deed of trust and $12,900 of unpaid notes secured by it. At the instance of Morelock, Boyer paid direct to Kelly $750 commission which the Finkes, by the sales contract, had agreed to pay. Boyer then paid to the Finkes $1,266.08, which was the balance of $2,100 due them under the deal, after deducting Kelly's commission and certain adjustments of accrued taxes, insurance and rents. At the closing of the deal, Boyer advised the Finkes to open an account in the trust company, which they did. He also said to them: "Leave your notes in here and I will go down town every day and I will collect them as the money comes in and deposit it to your account." In this manner, the Finkes collected the first three notes maturing after they became the owners of the second deed of trust. Then for six months the notes were delinquent and Mrs. Finke complained bitterly to Boyer. He from time to time made the excuse that repairs ate up the rents. Mrs. Finke also testified she declared to Boyer that Kelly and Morelock had not treated them right in giving them the second deed of trust for their property. Boyer answered that

"they had skinned him too," that after he had paid them he "had nothing left out of the deal either." Boyer on the stand denied this.

Immediately after Boyer acquired the Louisville Avenue property in the name of his sister, Mrs. Stringer, he caused it to be encumbered with a first mortgage for $7,500 and a second mortgage for $2,000. Plaintiff tried to prove by statements ascribed to Morelock shortly before his death, that the second deed of trust for $2,000 placed on the Louisville Avenue property, was used for the purpose of rewarding Morelock and Kelly for their part in bringing about the trade between the Finkes and Boyer. But the testimony was excluded. Boyer denied that he gave any compensation to Kelly or Morelock for their part in the deal, and he testified that he sold the $2,000 second deed of trust on the Louisville Avenue flat. He could not remember to whom he sold it. He supposed that he put the proceeds of the sale in his bank account, but an examination of the account did not reveal any deposit which Boyer could identify as the money derived from the sale of this deed.

In the fall of 1926, shortly after the second deed of trust notes which the Finkes held began to be delinquent, Boyer sold the Louisville Avenue property to Mrs. Mary O'Toole for about $16,000, Kelly acting as Boyer's agent in this deal. Kelly had been unable to sell the property for the Finkes for more than $15,000 almost all of which was paid by the second deed of trust notes at par.

When six monthly notes had become past due and were unpaid and when they failed to get aid or comfort from Boyer the Finkes appealed to Kelly to help them to trade off the second deed of trust on the Franklin Avenue property. In the spring of 1927, Kelly made a deal with Miss Katherine Higgins, who was in the building and selling business, to sell to the Finkes for $24,500 a four-family flat which she was constructing on Kossuth Avenue. The flats were subject to mortgages of $11,000 and Miss Higgins agreed to take at par in part payment of the balance the Franklin Avenue second deed of trust notes on which there was then due $10,900, the balance, over $2,000 to be paid cash by the Finkes. Kelly exacted of Miss Higgins either $1,500 or $1,700 commission and he explained he had to make an excessive charge because he had to compensate Morelock for gaining the consent of the Finkes to all deals which he made for them.

The deal for the trade of the second deed of trust for the Kossuth Avenue property was closed in Kelly's office on April 29, 1927. There were present the Finkes, Miss Higgins, Kelly, Morelock and Boyer. The Finkes had no reason to expect the attendance of Boyer. But he testified he came at the invitation of Kelly to look at the papers, Kelly professing inexperience although he had been in the real estate business since 1922. Boyer looked at the papers and approved them. When the transaction was closed Boyer said privately to the Finkes that they had made a good deal, as the Franklin-

Compton second deed of trust loan was a very bad equity. Boyer on the stand, explained that he was present at the closing of the Higgins deal out of sympathy for the Finkes. Kelly, Boyer and Miss Higgins had knowledge that there were mechanics' lien claims pending against the Kossuth Avenue property. But they had not been filed of record when the flats were transferred to the Finkes, and the abstract of title showed only mortgage encumbrances amounting to $11,000. Lien claims amounting to $5,000 were filed later. An appraiser valued the Kossuth Avenue property at $19,000. It had been sold to the Finkes at $24,500.

When the second deed of trust notes continued to be delinquent after Miss Higgins had acquired them, she in August, 1927 caused the Franklin-Compton property to be foreclosed, and she bought it in the name of her aunt. But before she began foreclosure, she made an arrangement with Boyer to take the property off her hands for $3,800. So it was that Miss Higgins' aunt, the purchaser at the foreclosure sale, transferred the Franklin-Compton stores and flats to Boyer's sister, Mrs. Stringer, upon payment of $3,800 by Boyer to Miss Higgins. Boyer paid off an installment of $5,000 due on the $40,000 first deed of trust, and soon after he bought the first deed of trust for $30,000, after the holder had examined his security. It thus appears that in a cycle of sales of the Franklin Avenue property Boyer within a few years, bought it for $54,000, put on it a second mortgage for $15,000, thereby raising the encumbrances to the limit of the purchase price, and creating an apparent further equity which had not existed before. For this further equity, he acquired from Bachman residence property in St. Louis County, and for the second deed of trust at par he obtained the Finke unmortgaged flat worth $15,000. For $3,800 he took back the Franklin Avenue stores and flats, with the $15,000 mortgage eliminated by foreclosure. And finally he bought in the first deed of trust on the stores and flats at a discount of $5,000.

For brevity, we have cast the foregoing narrative in categorical form without specific reference to the evidentiary authority. All statements and acts ascribed to Boyer, (except those of record) which may have tended to sustain the ruling of the court on the demurrer, were denied by him. ■ But our summary of the evidence is in line with the familiar rule that, in passing upon a demurrer, the court will consider the evidence in the light most favorable to plaintiffs.

In our opinion the trial court rightly overruled Boyer's demurrers to the evidence. ■ It is true that fraud is never to be presumed. And when a transaction under consideration comports as well with honest and fair dealing as with a fraudulent purpose, it is to be referred to the better motive. [Garesche v. MacDonald, 103 Mo. 1, 15 S. W. 379, citing Funkhouser v. Lay, 78 Mo. 458; Ryan

v. Young, 79 Mo. 30; Henderson v. Henderson, 55 Mo. 535; Ames v. Gilmore, 59 Mo. 537.] ▆ Yet it is not necessary that fraud be shown by direct evidence. It may be established by facts and circumstances.

▆ Not only Kelly and Morelock, but Boyer himself stated to plaintiffs that the Franklin-Compton Avenues property was worth $68,000 to $70,000 and that the rental revenue was $860 per month, and was ample to meet the monthly notes. The value and the rentals were master facts and were falsely represented to the Finkes, who relied upon them to their loss. Finke did not deal with Boyer, nor indeed with his own agents, Kelly and Morelock, on an equality of opportunity. Finke, as has been said, was a cobbler and nothing else. There is an adage which warns the shoemaker to stick to his last. It had a literal meaning for Finke, but it was lost upon him. Boyer, Kelly and Morelock, on the other hand, were efficiency experts in the intricacies of second deeds of trust and wise in the mysteries of equities in income property of which the Franklin Avenue premises were a type. When therefore these men stated that the property was worth $68,000 to $70,000 and had a monthly income of $860 they stated not opinions but facts which the Finkes, trustful and childlike, took to be true.

The rent collections were facts founded on figures and not on future expectancies. Boyer owned the property from May, 1924, to September, 1925, and of course he had first-hand knowledge of the rents during that period. When he sold the property he retained the second deed of trust which, as added security, gave to the holder an assignment of rents. It is not only a fair but a compelling inference that, by the powers which the assignment gave to him, he continued to know what was the amount of the rents. He based his assurance to the Finkes that the rents were $860 a month on rent statements. His testimony and that of the rent collector make clear that the rents collected averaged much less than $860 per month. Therefore there was a misrepresentation of a fact as to the rents.

▆ The cornerstone of the doctrine of fraud is that the statement alleged to be a material misrepresentation, must be an affirmation of fact. Expressions as to the values sometimes may be opinions and again they may be statements of fact. Stonemets v. Head, 248 Mo. 243, 154 S. W. 108, a case arising out of misrepresentations of the value of traded land, makes an enlightened examination of the question of opinions and facts in actions for fraud. Pomeroy (2 Pom. Eq. Juris. (35 Ed.) sec. 878) is quoted at length. The following paragraph is in point (154 S. W. l. c. 114): "There is still another and perhaps more common form of such misrepresentation. Wherever a party states a matter, which might otherwise be only an opinion, and does not state it as the mere expression of his own

opinion, but affirms it as an existing fact material to the transaction, so that the other party may reasonably treat it as a fact, and rely and act upon it as such, then the statement clearly becomes an affirmation of fact within the meaning of the general rule, and may be a fraudulent misrepresentation. The statements which most frequently come with this branch of the rule are those concerning value.''

And we find the rule thus stated in Story's Commentaries on Equity Jurisprudence (14 Ed. Vol. I, sec. 280): ''A statement that land is worth a given price per acre, without more is nothing more than an expression of opinion. But where the representation as to the value of the land per acre was expressly made as a statement of a fact, and the plaintiff traded her millinery store in exchange for the land, believing it to be worth what it was represented to be, and she had never seen the land and relied entirely upon the value of the land as it was represented by the defendant, this was not the expression of an opinion, but the misrepresentation of a fact.''

In the instant case the thing sold was not the land and building at Franklin and Compton Avenues, St. Louis, but a set of promissory notes, secured by a second deed of trust upon that property. The notes were signed by a straw man holding title to the land and were indorsed by the payee without recourse. There was no claim or pretense that the name of the maker gave any value to the notes. Their worth lay alone in the security afforded by the second deed of trust which was junior to a first deed of trust for $40,000. The security and the value of the second deed of trust notes depended upon the value of the property, and also upon the amount of the rents and their availability to meet the monthly notes after prior charges had been satisfied. The value of the land was stated as a fact and not as an opinion to be $68,000 to $70,000. The value of the land and the amount of the rents were master facts in the fixation of the worth of the secured monthly notes. And these master facts were misrepresented by Boyer to the Finkes.

II. Appellant urges that, respondent having exchanged at its face value the second deed of trust for the Kossuth Avenue property, suffered no damages. This objection is without merit. The evidence warrants the conclusion that the selling price of the Kossuth Avenue flat, namely $24,000, was inflated in view of the fact that a large part of the consideration was the second deed of trust having, at the time, a par value of $10,900. If the second deed of trust were sold for cash, the notes secured by it might or might not be discounted as the parties might agree. And such cash sale price if admissible in a proper case would largely determine any question of damages. But it is a fair inference from the record in

the case that a discount of the notes took the form of a premium upon a cash price for the Kossuth Avenue flats. This property was subject to mortgages amounting to $11,000. Unpaid bills for material and labor running up to $5,000 were about to be reduced to mechanics' lien claims field for record. Miss Higgins, the builder, was keen to be rid of her unfinished work but on terms that would net her something. So despite the fact that six monthly notes of the second deed of trust were delinquent she fixed the selling price of her flats at a sum which would equal, above the mortgages, the unpaid amount of the second deed of trust notes and two thousand dollars of real money, to be paid by the Finkes.

III. A further assignment of error is related to the preceding one. Appellant complains that the court refused to give a requested instruction to the effect that the verdict should be for the defendants if the jury found that plaintiffs, in payment of the purchase price of the Kossuth Avenue property gave the second deed of trust on the Franklin-Compton property and received as credit on the purchase price the then face value of the notes secured by the second deed of trust. Although the court refused to give this requested instruction it gave of its own motion an instruction to the effect that the verdict of the jury should be for the defendants if the jury found that plaintiffs, in *part* payment of the purchase price of the Kossuth Avenue property gave the second deed of trust on the Franklin-Compton property and received as credit on the purchase price the then face value of the notes secured by the second deed of trust *in property reasonably worth the amount then evidenced by said notes and second deed of trust in addition to the encumbrances then of record against said property*. We have italicised in the epitome of the given instruction the words which differentiate it from the refused instruction. It is our view that the instruction given by the court properly states the law applicable to the testimony admitted on the Kossuth Avenue transaction. Appellant's instruction assumes as a fact that respondents received full value for their notes. The wide range of the evidence does not warrant that assumption as we have noted in our examination of the preceding assignment.

IV. It is next urged that, the Finkes having assigned the second deed of trust, they waived their right to recover damages for the fraud and deceit charged. While we are of opinion that the authorities cited do not support this proposition, we rule against appellant upon the ground that he did not plead the waiver. His answer is a general denial. The objection is in effect that plaintiffs, by reason of their assignment of the notes, did not have legal capacity

to sue.   That defense must be raised by demurrer or by affirmative answer.

V. Appellant assigns error in the following instruction on the measure of damages: "The court instructs the jury that if you should find a verdict in favor of the plaintiffs in this case you will assess their actual damages in such sum as you may find and believe from the evidence to be the difference, if any, between the reasonable, fair market value of the Louisville Avenue property described in the evidence and the fair, reasonable market value of the notes aggregating $12,900, secured by a second deed of trust on the Compton-Franklin property mentioned in the evidence, less such sum as you may believe from the evidence plaintiffs received in cash from the defendant Boyer, but in no event will you assess the plaintiffs' actual damages in excess of the sum of $12,000."

Appellant argues that the measure of damages in an action for fraud and deceit, as in this case, is not the difference between the price paid and the actual value of the property received, but is the difference between the actual value of the property received at the time of its reception and what its value would have been if the representations concerning same had been true.  This is the rule laid down in the case of Kendrick v. Ryus, 225 Mo. 150, 123 S. W. 937. The rule is as appellant states it.  In Kendrick v. Ryus, GRAVES, J., outlined the conflicting rules on the measure of damages thus (123 S. W. l. c. 939): "The one class of cases of which Smith v. Bolles, 132 U. S. 125, 10 Sup. Ct. 39, 33 L. Ed. 279, is a representative case, fixes the measure of damages at the difference between the actual value of the property and the price paid, thus making no allowance for benefits in the bargain.  The other class of cases of which Morse v. Hutchins, 102 Mass. 439, is an example, fixes the measure of damages at the difference between the actual value of the property at the date of the sale and the value of such property if it had been as represented, thus making allowance to the purchaser for the benefits of his bargain.  So that the real distinction between the two lines of cases is that one recognizes the purchaser's benefits in the bargain as an element of damages in an action for fraud and deceit and the other does not.  In other words, one line of cases gives to the purchaser only what he has actually parted with in the bargain, whilst the other line not only gives him that, but in addition, gives him the benefit of his bargain, by permitting him to show what the property would have been worth had it been as represented."

In the Kendrick case, the trial court gave an instruction on the measure of damages according to the "benefits of the bargain" rule and the defendant complained, but this court held that plaintiffs were entitled to those benefits.  In the instant case, the in-

struction seems to be more in accord with the Federal rule than with the Missouri rule. But if that be error it is not prejudicial to appellant, because the Federal rule favors defendants while the Missouri rule tends to enhance the damages of plaintiffs.

It may further be answered to appellants' objection that the rule for which appellant contends is applicable to cases in which the plaintiff sues for damages on account of the quality of the property which he bought. In Kendrick v. Ryus, supra, the plaintiff bought a salted mine. In Bank of Atchison County v. Byers et al., 139 Mo. 627, 41 S. W. 325, plaintiff bought what were represented to be first mortgage bonds but which proved to be second mortgage bonds. Boyce et al. v. Gingrich, 154 Mo. App. 198, 134 S. W. 79, was an action for damages for fraudulent representations in the exchange of real estate, the plaintiff complaining of the quality of a Kansas farm which he took in exchange for Missouri town lots. Boyd v. Wahl, 157 S. W. 833, was a similar action. Plaintiff sued for damages arising out of fraudulent representations of the value and the income of an electric light plant which he took in exchange for farm land. In the instant case plaintiffs charge that they were induced by the fraudulent acts of defendants to sell their Louisville Avenue flat of the value of $15,000, for a consideration worth not to exceed $3,000. That the transaction between plaintiffs and Boyer was a sale of the real estate, and not a barter or an exchange is quite clear. Speigle et al. v. Meredith et al., 22 Federal cases page 910, Case No. 13227, was a suit to quiet title to real estate and arose out of a conveyance of land by a railroad company to one of its bondholders in payment of bonds held by him. It was contended that this was not a sale. The court held that it was a sale and said: "A sale of lands does not necessarily suppose a sale for cash. The term barter is not applied to contracts concerning land, but to such only as relate to goods and chattels. Barter is 'a contract by which the parties exchange goods.' Bouv. Law Dict. This transaction, therefore, was not a barter.

"Now was the transaction an exchange? This term, as applied to lands, 'is a mutual grant of equal interests'—'as a fee simple for a fee simple, a lease of twenty years for a lease of twenty years, and the like.' 2 Bl. Comm. 323. An exchange is a transfer of lands for lands. This, therefore, was not an exchange; for it was a transfer of lands for coupon bonds.

"There can be no doubt that a conveyance of lands in consideration of personal property or choses in action, is strictly and literally a sale."

The assignment of error in the measure of damages is not well taken.

VI. Appellant contends that "punitive damages are not recoverable in this suit, for the reason that such damages are recoverable only where the act from which plaintiff suffered injury partakes of the nature of a public as well as of private injury." He cites but one authority in support of this point and that was a case of assault, Wingate v. Bunton, 193 Mo. App. 470, 186 S. W. 32. His objection seems to be that punitive damages "are not recoverable except in cases where malice, violence or passion and wanton recklessness is shown," Hoffman v. Gill, 102 Mo. 320, 77 S. W. 146, l. c. 147, a fraud case in which GOODE, J., dissented from the opinion of the St. Louis Court of Appeals in the disallowance of punitive damages.

Since the instant case was briefed and argued, this court en banc has held that punitive damages can be awarded in a case of "fraud alleged to have been perpetrated upon the plaintiff by the defendants in a real estate trade," Luikart v. Miller et al., 48 S. W. (2d) 867. In that case the court en banc said: "Punitive damages can be awarded in cases of this character where the representations were characterized by malice. Not necessarily with the purpose to inflict a wrong upon the party to whom they are made; malice, according to the legal definition, is 'the intentional doing of a wrongful act without just cause or excuse.' McNamara v. St. Louis Transit Co., 182 Mo. 681, 81 S. W. 880, 881, 66 L. R. A. 486. An act must have been done either with an intent to inflict an injury or under circumstances that the law will imply an evil intent. It may be implied from reckless disregard of another's rights and interests. Summers v. Keller, 152 Mo. App. l. c. 634, 635, 133 S. W. 1180, a ruling approved by this court, 262 Mo. 332, 171 S. W. 336."

And while the court in the foregoing case ordered a *remittitur* of the punitive damages awarded by the verdict and judgment, for the reason that certain acts and representations did not induce the trade, the rule stated and quoted stands and authorizes punitive damages here.

Reversible error not appearing, the judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.