Victoria L. MENAUGH,
Plaintiff–Respondent,

v.

RESLER OPTOMETRY, INC.,
Defendant–Appellant.

No. 72675.

Supreme Court of Missouri,
En Banc.

Nov. 20, 1990.

Gerald J. Zafft, Eleanor A. Maynard, Joseph H. Mueller, Robyn G. Fox, St. Louis, for defendant-appellant.

Anthony S. Bruning, St. Louis, for plaintiff-respondent.

BLACKMAR, Chief Justice.

Victoria Menaugh had a verdict against Resler Optometry, Inc. for $25,000.00 actual damages and $125,000.00 punitive damages. The jury found that she was thirty-eight percent negligent and the court reduced the actual damage assessment accordingly, but declined to reduce the punitive portion of the award. The Missouri Court of Appeals, Eastern District, affirmed. We granted transfer to consider questions involving the award of punitive damages. We affirm the award of actual damages but reverse the portion of the judgment awarding punitive damages and remand for retrial.

The plaintiff on November 25, 1983 purchased a new pair of extended wear contact lenses from the defendant. The defendant is a corporation whose sole stockholder, Dr. Louis Resler, is a licensed optometrist. The plaintiff had received optometric care from the defendant for several years. She needed new lenses because of a tear in one of the soft contact lenses she had worn since 1977. She had at one time used a disinfectant solution for her soft contacts, but suffered irritation and was advised by the defendant to disinfect the lenses in a heating device, known as an "aseptor." This is commonly referred to as "boiling," and the device as a "boiler," but the temperature does not reach the boiling point, which would be harmful to soft contact lenses. She was regularly using the heating method of disinfecting at the time of her 1983 visit.

After she obtained her new soft lenses she no longer used the heat method of disinfecting. She relied on the advice given her by the defendant, as follows:

Q What, if anything, did he tell you about those contacts?

A Well, I had been on the boiler method or the heat method, so I asked him, "How do I take care of these, do I boil these?" He said, no, that I didn't boil these.

Q Did he give you anything?

A He gave me a bottle of solution LC–65.

She used the solution given her, and threw away the aseptor which Dr. Resler had previously instructed her to use. The solution was not a disinfectant. It rather was a cleaning solution. Ample expert testimony showed that this solution was not adequate as a disinfectant, and that it would be necessary to use either heat or a disinfectant solution. The defendant does not challenge the proof of causation.

The plaintiff also testified that she was attended during the 1983 visit by John Resler, whom she recognized from high school days. John Resler is the son of Dr. Louis Resler. He is not a licensed optometrist, but has a computer systems business. He does some work on computer systems for the defendant and receives a salary. The plaintiff testified that he examined her eyes, prescribed the lenses (without a refractive change), and advised her as to lens care. Her counsel argued this advice by an unlicensed person as the basis for her punitive damage claim.

The defendant sharply disputed the claim that an unlicensed person had served the plaintiff. The jury of course was entitled to believe her testimony that she recognized the individual who attended her. We consider the contrary evidence simply to determine whether all disputed factual issues were properly submitted to the jury. For this purpose it is not necessary to

discuss the defendant's evidence in depth. Suffice it to say that it consisted of John Resler's unequivocal denials, the plaintiff's earlier inconsistent statements, and the absence of any corroborating evidence.

■ The defendant first argues that the evidence is insufficient to support the verdict for punitive damages. We do not agree. The defendant concedes that the services it furnished the plaintiff could properly be provided only by a licensed optometrist. The jury could surely find that, if an unlicensed person presumed to give advice or perform services which were appropriate only for a licensed optometrist, this conduct "showed complete indifference to or conscious disregard for the safety of others." (MAI 10.02). The unlicensed person should realize that he could not give reliable advice about the care of lenses and that he exposed the patient to danger by giving any advice at all. The defendant is of course liable for the acts of an unlicensed person whom it places in a position in which he could attend patients and give advice.[1]

■ The defendant next argues that the issue of punitive damages was not properly submitted to the jury by the instructions given. We conclude that this point has merit.

The verdict director, Instruction 6, reads as follows:

In your verdict you must assess a percentage of fault to defendant Resler Optometry, Inc., whether or not plaintiff was partly at fault if you believe:

FIRST, defendant Resler Optometry, Inc., improperly instructed plaintiff on how to disinfect extended wear contact lenses, and

SECOND, defendant Resler Optometry, Inc., was thereby negligent, and

THIRD, such negligence directly caused or directly contributed to cause damage to plaintiff.

The term "negligent" or "negligence" as used in these instructions means the failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of defendant's profession.

It is patent that the jury could find for the plaintiff under this instruction without believing her assertion that she was served by an unlicensed person whom she recognized. The jury could find for the plaintiff if of the opinion that any employee of the defendant had given improper advice. Nor does the verdict director require the jury to find that the defendant had reason to know that the improper directions created an unreasonable risk of harm to the plaintiff. The verdict director, in short, submitted only ordinary negligence, and could be satisfied by several hypotheses supported by the evidence.[2]

The punitive damage instruction is in the form of MAI 10.02, and reads as follows:

If you find in favor of plaintiff under Instruction Number 6, and if you believe the conduct of defendant as submitted in Instruction Number 6 showed complete indifference to or conscious disregard for the safety of others, then in addition to any damages to which you may find plaintiff entitled under Instruction Number 10 you may award plaintiff an additional sum as you believe will serve to punish defendant and to deter defendant and others from like conduct.

This instruction does not specifically require a finding that optometric services were provided by an unlicensed person, but the plaintiff did not argue any other theory in support of her punitive damage claim and we perceive none other which is supported by the evidence.

The plaintiff relies on *Sharp v. Robberson*, 495 S.W.2d 394 (Mo. banc 1973), and points out that MAI 10.02 was revised in

---

1. John Resler did not claim to be a technically trained person operating under the supervision of a licensed optometrist. He rather denied that he had any part in examining or advising the plaintiff, or any other patient of the defendant.

2. There is a possibility of confusion as to the meaning of "boil," since, under the heat method, the solution does not reach the boiling point. One possibility under Instruction #6 is that the jury found the advice improper simply because it was confusing.

conformance with the requirements of that case. *Sharp* confirmed the cases, not great in number but dating back many years, which hold that a claim for punitive damages is not inconsistent with a claim for negligence, so long as the evidence contains factual support for an award of punitive damages and the jury is properly instructed.[3] A punitive award is not appropriate in every negligence case. Facts in addition to those relied on in the negligence submission must be established in order to recover punitive damages. *Sharp* expressly holds that a plaintiff did not have to take the risk of an adverse verdict on a negligence claim by encumbering the negligence verdict director with the additional facts which are needed for the punitive damage submission.

*Sharp* differs from the present case in that, there, the verdict director submitted the element of the defendant's knowledge (scienter) to the jury. Scienter in some degree is essential to the award of punitive damages in a negligence case. *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.*, 700 S.W.2d 426, 435 (Mo. banc 1985); Restatement (Second) of Torts, § 500 (1965). It was proper, then, to use the verdict director as a foundation for the elements of aggravation set out in MAI 10.02 to provide a complete and legally sufficient submission. The opinion observes that there was no complaint regarding the form of the punitive damage instruction. The defendant rather argued that the plaintiff should be required to elect between an ordinary negligence submission and a punitive damage submission. That point was rejected by the Court.

Here the verdict director is silent about what the defendant knew, should have known, or had reason to know. Nor does the punitive damage instruction aid it in that respect. Under the verdict director, the jury could have reached a verdict for the plaintiff by either of two routes. It could have believed that she was served by the unlicensed John Resler, or it could have found that some other employee of the defendant negligently gave her improper advice about lens care. Both theories are supported by the evidence, and the plaintiff had no obligation to delineate them further in the negligence verdict director.

The punitive damages instruction, however, presents a different problem. As we have said earlier, a finding that the improper advice was given by the unlicensed attendant is essential to the plaintiff's recovery of punitive damages in this case. Instruction 11, however, would authorize the jury to award punitive damages without making that finding. The plaintiff argues that the verdict on the punitive damage claim shows by its own force that the jury must have found that John Resler was the agent of the defendant who acted in the premises. We are not able to make this assumption. We cannot assume that the jury did not follow a particular route to the verdict if that route is authorized by the instructions. So we cannot say from the instructions and the verdict that the jury necessarily found all facts essential to a punitive damages recovery. There must be a foundation for a bare MAI 10.02 submission in the verdict director.

In so holding we do not depart from the teaching of *Sharp,* that a plaintiff need not jeopardize the ordinary negligence verdict by adding language to the verdict director in order to support a punitive damage submission. The plaintiff may solve the problem of submitting necessary additional facts in several ways. As in *Sharp,* the verdict director may be sufficient to submit the issue of the defendant's knowledge, and may then be followed by 10.02. Another possibility is to make use of disjunctive submissions in the negligence verdict director, and then limit the punitive damages instruction to that portion of the verdict director which requires the jury to find the essential mental element. A third method might consist of adding such additional facts to 10.02 as are necessary to justify a

**3.** *McNamara v. Transit Co.,* 182 Mo. 676, 81 S.W. 880 (1904); *Reel v. Consolidated Inv. Co.,* 236 S.W. 43 (Mo.1921); *McKenzie v. Randolf,* 257 S.W. 126 (Mo.1923); *McClanahan v. St. Louis Public Service Co.,* 363 Mo. 500, 251 S.W.2d 704 (banc 1952); *Eoff v. Senter,* 317 S.W.2d 666 (Mo.App.1958).

punitive submission. *Cf.* MAI 10.04, 10.05, relating to products liability.

The plaintiff protests that the instructions are "right out of MAI." But it is not possible for MAI to cover all aspects of the substantive law, or to provide complete submissions for every possible issue which might arise in every case. There are times when a literal application of MAI will not produce a legally sufficient submission so that counsel will find it necessary to modify the MAI formulation. We have found the punitive damage instructions insufficient in *Sanders v. Daniel Int'l Corp.*, 682 S.W.2d 803, 814–816 (Mo. banc 1984) and *Burnett v. Griffith*, 769 S.W.2d 780, 786–790 (Mo. banc 1989), even though they apparently complied with MAI. In *Racer v. Utterman*, 629 S.W.2d 387, 397 (Mo.App. 1981), the court held that MAI 10.02 was not adequate to submit punitive damages in a products liability case because neither it nor the verdict director (MAI 25.05) required the necessary finding of actual or constructive knowledge. The combination of instructions is likewise inadequate here.

Our holding is in line with numerous recent cases which deal with problems of punitive damages. Though the fact situations differ, the uniform tenor of the recent cases is that punitive damages are to be the exception rather than the rule, and that they are to be confined to cases in which the evidence supports the award. The phraseology differs in different kinds of cases, but all depend on willful wrongdoing, or recklessness which is the legal equivalent of willfulness. In addition to *Sanders*, and *Burnett*, *see Hoover's Dairy*, 700 S.W.2d at 437 (Mo. banc 1985); *Bhagvandoss v. Beiersdorf, Inc.*, 723 S.W.2d 392, 397–398 (Mo. banc 1987). Also of interest is *Peterson v. Continental Boiler Works, Inc.*, 783 S.W.2d 896, 904 (Mo. banc 1990), which demonstrates that punitive damages cannot be obtained in a contract case simply by making allegations of willfulness or malice in the breach of the contract.

The defendant also argued that it should be entitled to converse the punitive damage submission. The trial court refused its tendered instruction. The plaintiff argues that a punitive damage instruction is not a verdict director, and that the notes on use for MAI permit a converse only to a verdict director.[4] A punitive damage instruction submits a distinct issue for jury determination, based on additional facts, and we believe that the defendant should have a right to converse the punitive submission by any of the permitted methods.[5] Inasmuch as the punitive damage claim must be retried, this holding will not inconvenience the plaintiff.

The defendant argues that punitive damage submissions should require "clear and convincing" evidence. This requirement is contrary to our normal requirements in the submission of civil cases. We are not disposed so to hold, or to follow cases from other jurisdictions so holding.

The defendant also argues that, because the jury found that the plaintiff's own negligence contributed to the injury, the punitive damage verdict should be reduced in proportion to the fault assessed against the plaintiff. We do not agree. Punitive damages are awarded not so much to benefit the plaintiff as to discourage persons in the position of the defendant from similar reckless and wanton conduct. It would not serve the purpose of the punitive damage award to reduce it for the reason assigned. The situation is comparable to *Lippard v. Houdaille Industries, Inc.*, 715 S.W.2d 491 (Mo. banc 1986), in which we held that the application of comparative fault to products liability cases would not serve the purpose of the doctrines developed by the Court for products liability, following the lead of the Restatement (Second) of Torts, § 402A, § 908 (1965).

4. To the effect that the term "verdict director" is not wholly inappropriate applied to MAI 10.02, *see Elam v. Alcolac, Inc.*, 765 S.W.2d 42, 224 (Mo.App.1988).

5. MAI 33.01 (1980 Revision), Converse Instructions—General Comment. "The form ... for the language of the converse instruction, other than the introductory phrase, is the verdict director itself." *Id.* at 488.

The defendant's remaining points need not be considered, because we are affording the defendant a new trial. We see no need for retrying anything except the issues relating to punitive damages.

The judgment for actual damages is affirmed. The judgment for punitive damages is reversed and the case is remanded for new trial on that portion of the case.

RENDLEN, HIGGINS, COVINGTON, HOLSTEIN, JJ., and SEILER, Senior Judge, concur.

ROBERTSON, J., concurs in separate opinion filed.

BILLINGS, J., not sitting.

ROBERTSON, Judge, concurring.

I concur in the principal opinion. The issue of the burden of proof required to permit a plaintiff to recover punitive damages against a defendant is an important one. The principal opinion addresses the issue in a single paragraph simply indicating that the Court believes that no change is presently appropriate.

As is obvious to all, punitive damages do not serve to compensate a wronged party, but "are imposed for the purpose of punishment and deterrence." *State ex rel. Smith v. Green*, 494 S.W.2d 55, 60 (Mo. banc 1973). It is thus important to remember when considering a burden of proof for punitive damages designed to ensure their proper award by jurors that the issue does not implicate the plaintiff's ability to recover for her damages. Instead, the issue is whether the egregious culpability of the defendant's acts is such that the plaintiff should receive an additional windfall as a symbolic representative of society in general, the purpose of which is to deter the defendant from committing further egregiously culpable acts.

In *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), a case involving the termination of parental rights, the United States Supreme Court wrote that a clear and convincing standard of proof better impresses the factfinder with the importance of the decision and lessens the chance of error. *Id.* at 764–

765, 102 S.Ct. at 1400–401. The court also noted that "a stricter standard of proof would reduce factual error." *Id.* at 767, 102 S.Ct. at 1402.

Apparently convinced that punitive damages should be awarded under a standard that reduces the possibility of factual error, several jurisdictions have modified their punitive damage laws to require that a plaintiff prove that the defendant acted with the requisite culpability by clear and convincing evidence before punitive damages may be awarded. *See, e.g., Wangen v. Ford Motor Company*, 97 Wis.2d 260, 294 N.W.2d 437 (1980); Minn.Stat.Ann. sec. 549.20; Or.Rev.Stat. sec. 30.925.

Having said all of this, it appears to me that a strong case can be made for requiring a clear and convincing standard for an award of punitive damages. In 1987, the General Assembly adopted Section 510.263, RSMo Cum.Supp.1989, which deals, among other things, with awards of punitive damages. At that time, the General Assembly did not see fit to raise the burden of proof to a clear and convincing standard. Given that the legislature has chosen to address punitive damages generally, but remained silent on the burden of proof, it is my view that this Court ought to defer to the General Assembly's policy choices. This is not to say that this Court does not have the authority to address this common law question; it does. It is, for the present, a policy of deference to the legislature that counsels restraint.