**Dick PAINE, Appellant,**

v.

**ALBANY INSURANCE COMPANY, Respondent.**

No. 22472.

Kansas City Court of Appeals. Missouri.

Jan. 7, 1956.

898

Allan M. Fisher, Kansas City, for appellant.

Joseph R. Hogsett, Hogsett, Houts, James, Randall & Hogsett, Kansas City, for respondent.

DEW, Presiding Judge.

This action was brought by the plaintiff under a fire insurance policy issued by the defendant to recover for the loss by fire of certain restaurant equipment. The verdict and judgment were in favor of the defendant, and plaintiff has appealed.

According to the plaintiff's testimony he purchased the restaurant in question, paying $2,100 for the equipment, which was inventoried at the time of purchase. The defendant had issued its fire insurance policy in the sum of $1,500 on the contents of the restaurant before plaintiff purchased it, which policy was duly assigned to the plaintiff with the approval of the defendant, through its agent Julius Koenigsdorf. Defendant twice thereafter renewed the policy for the same amount on the same property in the name of the plaintiff. The last policy was in effect at the time of the fire loss in evidence. All premiums on the above pol-

icies were duly paid by the plaintiff after the date of the purchase.

Plaintiff operated the restaurant 21 months. He had made tentative plans to close the restaurant before the end of April 1952, and to obtain a better location. He had planned to move to Armourdale, Kansas, where the location was better for patronage. His bills except current accounts, were paid up. He had given notice to terminate his tenancy. On the evening of April 21, 1952, as usual, plaintiff stopped on his way from his regular place of employment and ate his evening meal at the restaurant, and about 7:00 o'clock he locked up. He then drove a lady employee to her home and then drove to his own home. About midnight the employee, who had been called by one Max Koenigsdorf, telephoned him that the restaurant was on fire. He dressed and immediately went to the restaurant. The fire department had left, except the chief. The front door glass was broken out. The premises were dark and water was dripping from all parts of the restaurant and ashes and embers were everywhere.

Plaintiff found that the gas had been turned off and the electricity disconnected. The back wall had been pushed out and a lot of debris was out on the back porch. The kitchen was all charred and blistered, and ashes all over the floor. The shelves were charred and blistered and water-soaked. The burning paint falling from the ceiling scorched and blistered the areas wherever it fell. A curtain at the front window had holes burned in it and it was water-soaked. Burning paint and plaster had fallen on the refrigerator and made charred or singed marks. The marble top on the back bar was stained and the wood charred. Water and paint had fallen on the finish of the refrigerator, and the water had gotten into the insulation and motors. The stools at the counter were burned and water-soaked, and the pedestals spattered with burning paint. Records in the juke box were melted. Silverware was tarnished, and the china was charred, checkered and blackened. The metal on the gas range was discolored and blistered by the falling paint and was water-soaked, and the large canopy built in over the stove was damaged, and debris had fallen from it into the air intakes of the burners of the range, and the steam table connected with the range was blistered, charred and warped. Plaintiff testified as to the many items later listed for the defendant, and claimed to have been damaged by the fire, which list contained the plaintiff's valuations. The itemized statement referred to showed a total valuation as of the time of the fire of $2,278.55.

Plaintiff's witness Gus Nichols, a dealer in store fixtures and equipment, testified that he bought the salvage of the insured property from the plaintiff for $45; that it had been damaged by fire, water and smoke. He said he had to work on the property, but he resold the fan and cash register and that there was some salvage on the range, which had been pretty well burned. The pedestal fan, which had been wrapped in tarpaulin, had been cleaned up and had been resold for $65. He said he had taken the cabinet off the cash register, put in new checks, and cleaned it up. He said the exhaust fan and circulating fan were no good. He said he had sold the stools and pedestals for junk. He had given the electric refrigerator to a colored woman in return for removing it. This witness was asked if, in his opinion, any of the equipment, after it had been refinished, would have been of the same quality and as good as before the fire. He said only a few items, such as the stools, a fan and the cash register. He said the counter would cost as much to refinish as it would to buy a new one. He said he sold the parts of the stove for salvage. The canopy over the stove, he said, could not have been repaired so that he would have made a profit out of it. He was asked:

"Q. Did you ever figure what it would cost to sell him used equipment? A. Yes. To replace—well, not to

completely replace it, I mean we can't go in and replace everything that he has, but I mean I could set him up another place, I think we told him at that time, which I am not clear on, approximately $2,000. * * *

"Q. But you think it would cost $2,000 to put that back? A. Yes, to open any kind of a hamburger stand or anything else it would still run you approximately $2,000.

"Q. And that would be used equipment? A. Used equipment only, depending on the size of the place.

"Q. But this place you think would be about $2,000? A. Yes, I think— * * * I told him it would be about $2,000 to $2500 because I happened to have some stuff that I could give him a good buy on.

"Q. I see. This is the man you are referring to right back here? A. * * Paine."

Defendant's adjuster sent the plaintiff a complete proof of loss in which the value of the property before the fire was stated as $2,250, and the loss at $798, which proof of loss defendant asked plaintiff to sign. It did not, however, continue its offer to pay that amount at the trial.

The policy in question contained the following clause: "This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstances concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

Plaintiff, or one of his employees reported the fire to the defendant the next day after its occurrence. Defendant's adjuster, Mr. Butler, went to view the fire loss at once and left his card. Plaintiff called on Mr. Butler the following Saturday "to see how he was coming out on any adjustment." Butler was not yet ready to take up the matter and in a few days got word to plaintiff that a list of the contents of the building would be required. Plaintiff had prepared his itemized list and valuations after consulting catalogs, advertisements and other restaurant operators. Plaintiff was asked: "Q. In your opinion was the total that you have placed on the claim you made to Mr. Butler of $2,278.55 the reasonable value of the equipment that was damaged? A. Yes." He said he had given notice to terminate his tenancy and having been unable to get any results from the defendant, he had to sell the salvage in order to get out of the building.

Defendant admits in its brief that the fire in the restaurant resulted in "fire, heat, water or smoke damage in varying degrees to most of the contents therein"; that plaintiff notified defendant on the next day after the fire, and that its adjuster Mr. Butler, with Western Adjustment & Inspection Company, was at the scene and left his card; that the following Saturday plaintiff went to see him at his office; that Butler asked the plaintiff to prepare a list of the items for his claim; that plaintiff supplied the same within ten days after the fire; that the statement represented the loss to be $2,282.55. Butler testified that he had experience in the restaurant business in Kansas. As adjuster with his present employer he had adjusted about 3,000 claims. In fact, Butler testified that he inspected the fire loss in person on the day following the fire "and viewed the damage, made some pencil notes as to my opinion of damage, what could be repaired, different circumstances as to origin, damage to the building, things like that." He ordered pictures taken and identified them at the trial. He later had appraisal made by a Mr. Godsey as to the cost of repairing, refinishing and cleaning the damaged contents, and received a bid of $698 for such work, plus $100 for general cleaning of the property. He said that when plaintiff called on him he (witness) did not deny the defendant's liability to the plaintiff and never did thereafter; that later plaintiff handed him the itemized list

of valuations; that he tried to arbitrate with the plaintiff as to the amount of loss in view of the bid he had received for the repairs and cleaning. The Godsey bid, addressed to Mr. Butler, stated:

"We are pleased to submit a bid on the following work.

Furniture damaged by fire, belonging to, D. Pain , 1305 E. 8th, K.C.Mo.

| | | |
|---|---|---|
| Refinish 4 door Econmy refrigerator | | $ 80.00 |
| " | large airplane fan | 3.50 |
| " | & clean Roper range | 20.00 |
| Repaint large canope-12 grill | | 167.00 |
| Refinish large 10 cu ft. refrigerator | | 40.00 |
| " | Marble top slide door 10 ft. back bar | 85.00 |
| " | 1 metal bottle box | 7.50 |
| " | 1 24 ft counter | 150.00 |
| " | 10 chrome stools | 65.00 |
| " | 1 wooden slide top bottle box | 6.50 |
| Rebronze 1 glass pie case | | 4.00 |
| Refinish 1 metal stand | | 4.50 |
| Total | | $698.00 |

Thank you for giving us the opportunity of bidding on this work.

Sincerely,
(S) S. M. Godsey
By (S) Agnes Godsey

Jerry Katz Est. on cleaning Remainder of Fixture                                    $100.00."

Mr. Butler testified that he and the plaintiff then reached an agreement on the figure of $798 as the loss, based on the above bid. He said he requested plaintiff to sign a prepared proof of loss on such terms, but plaintiff asked that it be mailed to him, that he wished to talk to some one about it. Butler stated that he heard nothing further from plaintiff until this suit was brought.

Respecting his bid, Mr. Godsey admitted that he did not do electrical, mechnical or plumbing work; that he had not examined the connections to the stoves nor the plumbing, nor the motors of the fans. He said that he had intended to spray the sections of the 12 foot grill where the enamel had been injured instead of putting on new enamel and baking it. He admitted that his bid did not include any repairs to the insulation of the refrigerator, the coolers, or cleaning the valves and air holes and vents on the stove and grill; that he intended only to refinish the backs of the chairs.

Defendant's witness Joe Marchio, police detective, arrived at the scene of the fire a few minutes after midnight. He investi-gated the fire and took pictures of it. He testified that: "We come to the conclusion that it wasn't any arson, and that Mr. Paine was selling his restaurant, that was the last day it was supposed to be open."

There was much further testimony about the value of the restaurant fixtures, the cost of repair, the feasibility of the repairs and the extent of the damage done by the fire. Plaintiff's position was that for the purpose of use in a restaurant, where the public is invited to eat, the fixtures and equipment must be neat and clean in appearance, and that for the purpose of his use the items were practically a total loss.

■ At the outset we turn our attention to the defendant's motion to dismiss this appeal. The grounds assigned are that plaintiff has failed to comply with the Supreme Court Rule 1.08(b), 42 V.A.M.S. in that plaintiff's statement "does not reveal the great mass of facts in evidence upon which the jury found in defendant's favor, which facts show that plaintiff, in presenting his claim to defendant and in his sworn testimony at the trial, had made numerous willful and fraudulent misrepresentations of material facts pertaining to his alleged damage, in violation of the fraud clause in the fire insurance policy sued on", and further for the reason that plaintiff failed to supply page references to the transcript in many instances, contrary to the rule, and has failed to state what action or rulings of the Court are claimed to be erroneous in respect to points made. Plaintiff's subpoint (b) under his Point A, calling for this court to determine the weight of the evidence has no place in this appeal, since we cannot determine the weight of the evidence. Gaddy v. Skelly Oil Co., 364 Mo. 143, 259 S.W.2d 844, 848. Plaintiff's Point B presents a mere abstract question of law to the effect that the statutes require an insurance company to furnish blank proofs of loss after notice of loss. That point, in such form, presents nothing for our review under the rule cited. We have examined the brief in respect to the other

grounds and find the same in reasonable compliance with Rule 1.08(b). The motion to dismiss the appeal is overruled.

Plaintiff's first point is, in effect, that there was a difference of opinion between the plaintiff and defendant as to the values of some of the property before and after the fire; that such could not be the basis of a charge of misrepresentation, fraud or false swearing; that defendant failed to offer any evidence of fraud, misrepresentation or false swearing; that the trial court erred in submitting to the jury by Instructions VII and VIII, the issue of forfeiture by the plaintiff of all recovery under the policy under the forfeiture clause quoted. Those instructions, in substance, told the jury that if they found from the evidence that plaintiff had willfully and falsely sworn that all the restaurant contents had been totally destroyed or so overstated the damages thereto, for the purpose of deceiving the defendant, the verdict should be for the defendant.

Defendant maintains that in this case the controlling provision of the policy is the forfeiture clause mentioned. It contends that the submission of the plaintiff's willful misrepresentation and false swearing was justified by the evidence and the law and properly submitted and determined; that the instructions on such issue were properly ruled upon; that the issue of vexatious delay was properly withheld from the jury.

It is to be noted that according to the evidence the defendant had complete and early access to the restaurant after the fire and surveyed the damaged premises promptly and, it appears, meticulously, its agent taking notes of items and their condition as to the extent of damage. Three times the defendant had had occasion to value the property when the policies were issued, the last time within about 90 days before the fire. Its appraiser was experienced in restaurant equipment and had adjusted 3,000 insurance claims for his present employer. Defendant has not con-

tended that any item of the plaintiff's claim was, in fact, not owned by the plaintiff, or was misdescribed as to size, model or quality, or was not in the restaurant at the time of the fire, or was not used in connection with the operation of the restaurant, nor has it denied that all of such items were affected in some degree by the fire. In fact, defendant states in its brief that "The fire in the restaurant resulted in fire, heat or smoke damage in varying degrees to most of the contents therein." Defendant did not except to the plaintiff's list, nor to his valuations before the fire in the total sum of $2,282.50, when considered with a proposed settlement of the loss for $798. The adjuster accordingly filled out the claim of loss with those figures and sought the plaintiff's signature to it, without success. The plain fact is, under the evidence, the defendant is not predicating its charge of willful concealment, misrepresentations, fraud and false swearing upon facts relied upon, but upon the mere difference of opinions as to the valuation of the property before and after the loss, admitting damage to the plaintiff's items at least to the extent of $798, which it would otherwise have to pay. It claims plaintiff has forfeited all of his rights to recover anything under the policy because of such diversity of opinion as to values. It was said in State ex rel. Burton v. Allen, 312 Mo. 111, 278 S.W. 772, 773(1, 3): "It is undoubtedly the rule of decision that a statement or misrepresentation of value, even if false, where the parties occupy an equal footing, is the mere expression of an opinion on which a charge of fraud cannot be predicated. * * * State v. Zingher, 302 Mo. 650, 653, 259 S.W. 451, and cases cited."

█ Furthermore, the law is well settled that: "* * * where the means of knowledge are at hand and are equally available to both parties and the subject matter is alike open to their investigation, if one of them does not avail himself of those means and opportunities he will not be heard to say that he was deceived by

the other party's misrepresentation, if there be no confidential relationship between the parties and if no fraudulent devices have been practiced upon the one alleged to have been defrauded to induce him to refrain from making an inquiry, or to anesthetize his sense of caution. Conklin v. Missouri Pac. R. Co., 331 Mo. 734, 55 S.W.2d 306; State ex rel. Union Pac. R. Co. v. Bland, supra [324 Mo. 601, 23 S.W.2d 1029]; Poe v. Illinois Central R. Co., 339 Mo. 1025, 99 S.W.2d 82; Rau v. Robertson, Mo.Sup., 260 S.W. 751. But the contrary is true where the alleged fraud-feasor fraudulently induces his adversary to refrain from inquiry as where the fraudfeasor has, or by calculation and artifice obtains, the confidence of the other and causes him to forgo the exercise of caution. Conklin v. Missouri Pac. R. Co., supra; State ex rel. Union Pac. R. Co. v. Bland, supra; Rau v. Robertson, supra." Wood v. Robertson, Mo., 245 S.W.2d 80, 84. See also, Hanson v. Acceptance Finance Co., Inc., Mo.App., 270 S.W.2d 143.

■ Under the record and the authorities, we are of the opinion that the evidence was not sufficient to authorize the Court to submit to the jury the issue of a forfeiture by the plaintiff of all his right of recovery under the policy on the ground of concealment, willful misrepresentations, false swearing and fraud on his part, and that the Court erred in giving defendant's Instructions VII and VIII on that issue.

In respect to plaintiff's final Point C, asserting error on the part of the Court in refusing plaintiff's Instruction III, submitting the issue of vexatious delay and penalties and the giving of defendant's Instruction VI, eliminating the issue of vexatious delay, we are of the opinion, in view of the whole record, that the Court did not err in its rulings on those instructions.

The judgment is reversed and the cause remanded.

All concur.