Connie SHEPHERD, Respondent,

v.

Robert L. WOODSON and Thomas E.
Woodson, Appellants.

No. 46839.

Supreme Court of Missouri,

Division No. 2.

Sept. 14, 1959.

Motion for Rehearing or for Transfer to
Court en Banc Denied Oct. 12, 1959.

1

———◆———

Walter A. Raymond, Kansas City, for appellants.

James W. Benjamin, Rogers, Field, Gentry & Jackson, Butler Disman, Kansas City, for respondent.

BOHLING, Commissioner.

Mrs. Connie Shepherd, plaintiff, sued Robert L. Woodson and Thomas E. Woodson, defendants, in three counts for alleged fraud and deceit arising out of her purchase of the property known as 1212 East Forty-fourth Street in Kansas City, Missouri, subject to the payment of a first deed of trust securing an indebtedness of $8,300 and a second deed of trust securing an indebtedness of $4,200. Count I was to set aside a foreclosure sale and sheriff's deed of August 23, 1957, under the second deed of trust to defendant Thomas E. Woodson, and to cancel the deed of trust and note secured thereby. Plaintiff asked for actual damages in Count II and punitive damages in Count III. Defendants filed a joint answer, admitting that plain-

tiff assumed the aforesaid notes and deeds of trust, the foreclosure and deed under said second deed of trust, and denying each and every other allegation in the respective counts of plaintiff's petition; and a counterclaim for the conversion of described household furniture located on the said real estate. Plaintiff filed a general denial to the defendants' counterclaim. All issues were tried at the same time. The court submitted to the jury an issue of fact whether defendants had agreed not to foreclose the second deed of trust as alleged in plaintiff's petition. The jury answered this fact inquiry in the affirmative, and returned a verdict for plaintiff for $6,500 actual and $7,200 punitive damages; and a verdict for plaintiff on defendants' counterclaim. Judgment was entered for plaintiff in the total sum of $13,700; against defendants on their counterclaim; and on Count I of plaintiff's petition the court voided, cancelled and set aside the foreclosure proceedings and deed of August 23, 1957, and decreed the title to said property held by plaintiff on or before August 23, 1957, to be unaffected by said sale and deed. Defendants' motion for judgment notwithstanding the verdict or for a new trial was overruled and defendants have appealed. They brief only the issues involved in Counts II and III of plaintiff's petition, and contend plaintiff failed to make a submissible case for actual or punitive damages and that certain instructions were erroneous.

Robert L. Woodson purchased 1212 E. 44th Street, Kansas City, Mo., an 8-unit building, on September 12, 1956, for $9,-500, in response to a telephone call from his brother, Thomas E. Woodson, of Goff, Kansas, asking him to purchase the building if a good buy. Robert deposited $100 earnest money, paid another $400 when the real estate contract was signed and an additional $500 at the time of receiving the deed, at which time he executed a deed of trust on the property securing a note for $8,500. He took the title in his name. Thomas paid Robert the $1,000 September

17th. Thomas instructed Robert to remodel the building for six apartments with baths to secure a rental income. Thomas was injured in an automobile accident January 7, 1957, and told Robert to sell the property.

Plaintiff had operated beauty shops on rented premises. A short time prior to the instant transaction, she had a child and, desiring to stay at home, sold her beauty shop for $3,500 and wanted to invest the money in property that would yield an income and provide a home. Mrs. Zelma Marshall kept books for plaintiff and was auditor for the Tucker Realty Company (hereafter sometimes referred to as Tucker), a Kansas City real estate brokerage firm of long standing. She referred plaintiff to Tucker. Mrs. Virginia Tucker, president, Earl Aull, Jr., sales manager, and Mary Aull owned all the stock of Tucker.

Defendant Robert L. Woodson was a real estate salesman employed by Tucker. Real estate brokers employ salesmen as agents, and the salesman's license is issued under the broker's license.

Earl Aull, Jr., was acquainted with plaintiff. About three days before plaintiff met Robert Woodson, Aull showed plaintiff a small house. At his suggestion she made an offer of $4,000 for it. The owner rejected the offer. This was the only real property plaintiff ever made an offer on prior to meeting Robert Woodson.

Mrs. Virginia Tucker testified that Mrs. Marshall put plaintiff in touch with her; that Robert Woodson was present when she and Mrs. Marshall discussed plaintiff having $3,500 with which to make a down payment and being interested in securing property where she could live and have some income; that she gave Robert Woodson all the details and told him he was to represent Connie Shepherd and find her a suitable property.

Plaintiff testified that she had explained her situation to Mrs. Tucker; that Mrs.

Tucker appointed Robert Woodson as plaintiff's agent to show her property; that plaintiff told Robert she "was relying on him to show me some property that I could handle"; and that when she went with him to look at property she believed he represented her and relied on what he told her, and at the time she signed the contract to purchase she still relied on his being her agent, but she did not employ Robert Woodson to look at properties for her, never discussed paying him for his services and did not know she was supposed to pay "them."

Robert showed plaintiff several apartments and the Hawthorne Hotel on February 7, 1957. She told him she wanted to think about the hotel, but when she inquired on February 8th Robert informed her the hotel had been sold the previous night. Mrs. Tucker stated Robert brought plaintiff to the Tucker office after showing her the hotel. On February 8th he showed plaintiff three properties, including 1212 E. 44th Street. The building was vacant and was being remodeled for six apartments. Plaintiff testified Robert stated that the reasonable market value of the property was $16,000; that it could be finished for $2,500, the apartments would rent for $65 to $75, and when finished would be worth $25,000; that he could get plaintiff a $2,500 loan; that she could handle it with the money she had; that this was plaintiff's best buy; and that he would have to consult the owner by long distance, but was sure the owner would take the $3,500 down payment. The day was cold and they looked at 1212 E. 44th Street for about only thirty minutes.

Robert then took plaintiff to the Tucker Realty Company, where plaintiff, as buyer, contracted to purchase from Robert L. Woodson, as seller, 1212 E. 44th Street for $16,000, paid $3,500 down, which was deposited with Tucker, and assumed the existing loans, which were stated to be a first mortgage of $8,300, payable $100 monthly, including interest, and a second

mortgage of $4,200, payable $50 monthly, including interest. The contract provided: "Possession with closing of sale." After plaintiff had signed the contract and made the $3,500 down payment, Robert stated the owner would rather not deliver the warranty deed until after March 25th.

Mrs. Tucker testified that Robert Woodson furnished all the information for the contract. She, as did plaintiff, testified that Robert, when asked about his name being on the contract, said that he was acting as a "straw"; that the seller was a friend of his who was out of the city and he would contact him. Mrs. Tucker testified she had no reason to doubt him at that time. Plaintiff testified she had not purchased property before and did not know what it was all about; that Robert never asked for her husband's signature, and never told her that his brother or that he, Robert, was interested in the ownership of the property.

Plaintiff desired to proceed with the remodeling to secure rental income, and under a contract with Robert of February 22nd she was given "access to the property to make needed redecorating and remodeling," she to pay all costs incurred therefor after said date, loan payments due April 1, and the costs of a title policy and mortgage policy.

On February 25, 1957, Robert L. Woodson executed a second deed of trust against the property to Henry H. Fox, Jr., for Thomas E. Woodson to secure the payment of a $4,225 promissory note.

Plaintiff went ahead with the remodeling about February 27th. Robert Woodson testified the building needed new floors, baths, kitchens, bathroom partitions, front door, outside exit for the second floor, three specially made windows and other miscellaneous carpentry, cement and other work. Plaintiff stated defendants had performed some of the remodeling; for instance, partitions had been put in; plumb-

ing had been roughed-in; a new door installed; work on the windows and outside stair had been started but not finished. Plaintiff testified it took a carpenter three weeks to put it in shape for other workmen. She had to replaster and repaint. The woodwork had rotted out. She furnished fixtures for four new bathrooms and a kitchen sink. She had papering, flooring, electrical and plumbing work done, and put cabinets in the kitchens. She paid for the special windows. She introduced in evidence an itemized statement, supported by receipted bills and cancelled checks, showing payments of $2,250.35, and unpaid bills of $1,482.26, a total of $3,732.61. She stated there were other items. Robert testified that he and his brother put $4,000 to $4,500 in remodeling the building. Plaintiff's pretrial motion for defendants to produce their records showing their expenditures was sustained by the court. Robert stated these checks were available in the court room. When plaintiff's counsel asked Robert if the records defendants produced under the court's order just prior to the trial showed expenditures of only $1,657.23, Robert answered: "No." Plaintiff's counsel requested the production of the checks for cross-examination and to show the jury. Defendants refused to produce the checks.

Plaintiff's deed was executed by Robert Woodson March 26th, and the title insurance certificate bears date of March 27, 1957. Tucker issued its check, dated March 28th, to Robert L. Woodson for $2,812.44, and Robert sent Thomas Woodson a check, dated April 2d, for $2,300, the amount coming to Thomas from the down payment.

On March 26th Robert took plaintiff to the City National Bank, but the bank would loan plaintiff only $1,500, and, according to Robert, required him to co-sign the note.

Soon after March 26th plaintiff realized she could not finish the remodeling for $1,500. She sought to have the transaction cancelled and her $3,500 returned. Mrs. Tucker and Robert Woodson refused because she had signed the contract. About this time she told Mrs. Tucker she thought Robert Woodson was the owner as his name appeared in the title. Mrs. Tucker had Mr. Aull, Tucker's sales manager, look at the property, and he telephoned Mrs. Tucker that evening. Mrs. Tucker arranged for a meeting on April 8th between plaintiff, Robert, Mr. Aull and herself. At this meeting, Robert was asked whether he had owned the property and who had owned it. He stated he represented the owner; was not the owner himself; and that the owner was out of town. He did not name the owner. Mrs. Tucker called a second meeting but it was not held.

The Tucker Realty Company advanced plaintiff $1,197.01 in connection with the completion of the improvements.

Mr. Aull had been with Tucker since July, 1952, and had experience as agent for buyers and sellers of income and residential property. Aull testified he saw this property about the first week in April; that there was still a lot of work to be done to prepare it for renting; that he did not spend three or four hours inspecting the building, but did look over the building and inspect it; that $9,000 was the most it was worth then, and that an experienced real estate man could look at a house and arrive pretty close at its value without a detailed inspection.

Vernon Engelhaupt, a licensed real estate broker with thirteen years' experience in the Kansas City area, testified that the building was about forty years old, originally had been a duplex, had been converted into six apartments, and was badly cut up. He valued the property as of the week prior to the trial, on a capitalization basis of each apartment being rented for $50 a month (they were not all occupied when he viewed it), at $14,100.

Robert Woodson, defendants' witness, testified that he explained to plaintiff that his brother, who lived out of town, owned

the property and he, Robert, was taking care of it; that his brother would sell it for less than the $18,000 he wanted if he could get enough of a down payment. He testified he represented the seller. He valued the property at $12,000 in September, 1956, $16,500 when plaintiff purchased and $20,000 as of the date of trial.

Plaintiff testified it was about four months before the remodeling was finished. There was testimony that the last three apartments were rented July 4th, 15th and 20th.

The second deed of trust was foreclosed August 23, 1957. No issue regarding the decree setting aside this foreclosure sale and deed is presented, and the evidence with respect thereto need not be set forth.

■ The general rule is that fraud is not presumed but must be affirmatively proved, and the burden of proof is on the party who charges fraud. Andres v. Brown, Mo., 300 S.W.2d 800 [3]; Weitzman v. Weitzman, Mo., 156 S.W.2d 906 [8]. Fraud may be established by circumstantial evidence. Massey v. Young, 73 Mo. 260, 273, 274; Finke v. Boyer, 331 Mo. 1242, 56 S.W.2d 372, 375 [2, 3].

■ In determining whether plaintiff made a submissible case of fraud we take plaintiff's evidence as true, disregard defendant's evidence in conflict therewith, and give plaintiff the benefit of all favorable inferences from all the evidence. Lindsay v. Sonora Gold Min. & Mill Co., Mo., 196 S.W. 764, 765 [1, 2]; Klika v. Albert Wenzlick Real Estate Co., Mo.App., 150 S.W.2d 18, 20 [1]; Kelley v. Absher, Mo.App., 210 S.W.2d 531, 535 [1].

■ Statements as to the value of property do not ordinarily constitute fraud, being considered mere expressions of opinion. Orlann v. Laederich, 338 Mo. 783, 92 S.W.2d 190, 197 [8–12]; Bondurant v. Raven Coal Co., Mo.App., 25 S.W.2d 566, 574 [19], citing cases.

Plaintiff contends, we think correctly, that her case falls within exceptions to the general rule. "Thus representations as to value may amount to fraud if the seller has or claims to have special knowledge and the purchaser is ignorant in respect of the value, which fact is known to the seller, the representations being made with the intention that they should be relied on. And representations of market price or market value are not necessarily mere representations of opinion, but may be representations of fact on which fraud may be predicated, unless the parties are dealing on an equal basis and the truth is readily obtainable by both." 3 Pomeroy's Equity Jurisprudence, 5th Ed., p. 454, § 878b. See also §§ 878–878b, appearing as § 878 in the third edition of Pomeroy and quoted with approval in Stonemets v. Head, 248 Mo. 243, 264, 154 S.W. 108, 114.

■ In 37 C.J.S. Fraud § 57, p. 336, after setting forth situations in which misrepresentations of value, even though no confidential relationship exists, may be treated as actionable fraud, including instances where misrepresentations of value "are expressed and understood as statements of fact"; "or where the speaker obviously knows or intends that the hearer will rely on his representations of value, because the hearer has expressly told him so," it is stated: "If the parties deal on unequal terms the rule that misrepresentations of value are nonactionable expressions of opinion does not apply and under such circumstances they will constitute remediable fraud * * *. Thus misrepresentations of value will be treated as actionable misrepresentations of fact, where the speaker is an expert, or may from his superior situation be reasonably assumed to know the truth; or where the hearer is incompetent, ignorant, and inexperienced * * *." See 23 Am. Jur., Fraud and Deceit, 830, §§ 59–62; 71 A.L.R. 622; 2 Black, Recission and Cancellation, 2d Ed., § 424.

"Scienter is present, and the other essential elements of fraud being present one is obviously liable, when a representation is made with knowledge of its falsity." 37 C.J.S. Fraud § 20. See Salmon v. Brookshire, Mo.App., 301 S.W.2d 48, 53 [4].

■ The following Missouri cases are in accord with the above authorities with respect to misrepresentations of value constituting actionable fraud. Luikart v. Miller, Mo., 48 S.W.2d 867, 869 [5–7]; Cahn v. Reid, 18 Mo.App. 115, 127–131; Chase v. Rusk, 90 Mo.App. 25, 29; Klika v. Albert Wenzlick Real Estate Co., Mo.App., 150 S.W.2d 18, 23 [2–4]; Brigham v. T. D. Judy Inv. Co., Mo.App., 186 S.W. 15, 21 [1–3, 9]; Finke v. Boyer, 331 Mo. 1242, 56 S.W.2d 372, 375 [5, 6]; Parish v. Casner, Mo., 282 S.W. 392, 409 [4–7]; Stones v. Richmond, 21 Mo.App. 17, 19. Davis v. Forman, 229 Mo. 27, 47, 129 S.W. 213, 219, states: "But when the seller purports to give his opinion, knowing the buyer relies on it, and at the same time conceals from the buyer a fact which he knows would cause the buyer to distrust or to place less confidence in the opinion given, the law does condemn the act and will relieve against it."

A basic distinction between the cases cited by defendants and the instant case is that in defendants' cases, infra, the parties were on an equal footing, were adversaries and dealing at arm's length. Krueger v. Licklider, Mo., 76 S.W.2d 113, 114 [2, 3]; Rardon v. Davis, Mo.App., 52 S.W.2d 193, 196 [6–8]; Wick v. Keshner, 8 Cir., 244 F.2d 146, 152, 153; Riley v. White, Mo. App., 231 S.W.2d 291, 297 [7–10]; Wood v. Robertson, Mo., 245 S.W.2d 80, 84, 85; Paine v. Albany Ins. Co., Mo.App., 299 S.W.2d 897, 902, 903; Bragg v. Kirksville Farmers' Packing & Warehouse Co., 205 Mo.App. 600, 226 S.W. 1012, 1013, 1016, and other cases.

Mr. Aull valued the property at not over $9,000 the first week of April, 1957, which was after some improvements had been made. The testimony of Vernon Engelhaupt, valuing the property at $14,100 a week before the trial and after the remodeling had been completed and all but one apartment occupied, was corroborative. This evidence was sufficient to sustain a finding that the actual value of the property on February 8, 1957, was less than the represented value of $16,000. Plaintiff established, instead of $2,500, incurred expenses of $3,732.61 in the preparation of the building for rental, and after completion had to rent the apartments for $55 to $60, and furnish the utilities, instead of the $65 to $75 Robert said they would rent for.

■ Plaintiff was a housewife and had operated, on rented premises, and sold two beauty shops. Her experience in real estate was limited to a prior rejected offer on a small house at the suggestion of Mr. Aull. The president of Tucker had its income property salesman Woodson to act as plaintiff's agent in finding a suitable property. Plaintiff also told him she was relying on him and relied on him as her agent. He showed plaintiff a property in which she was interested on February 7th, and told her the next morning that it had been sold. On February 8th he showed her the property in question. After looking at it for thirty minutes, plaintiff accompanied him to the Tucker office and executed the contract to purchase. The credibility of the witnesses and the weight of their testimony was for the jury. A jury could find that plaintiff was inexperienced and ignorant of real estate transactions; that Robert Woodson was an experienced real estate salesman, and that the parties were not dealing on an equal footing.

Defendants' contention that plaintiff failed to make a case is overruled.

■ Defendants complain of plaintiff's main instruction. It (omitting the "if you further find" and like recitals) submitted

the following essential findings: "* * * that on and prior to February 8, 1957, the defendant Robert L. Woodson, acting as the agent of and on behalf of his brother, Thomas E. Woodson * * *, represented to the plaintiff, Mrs. Shepherd, that the apartment building * * * had a reasonable market value of not less than $16,000.00 and that it was a good investment at that price, and * * * that remodeling of said apartment building necessary for its rental could be fully completed for not to exceed $2,500.00 * * *; and * * * that * * Robert L. Woodson intended that the plaintiff * * * should act upon the aforesaid representations * * *; and * * * that * * * Robert L. Woodson knew that the plaintiff * * * should act upon the aforesaid representations * * *; and * * * that * * * Robert L. Woodson knew that the plaintiff * * * was relying upon him to find investment real estate on her behalf; and * * * that the aforesaid representations * * * were false and known by * * * Robert L. Woodson to be false at the time that they were made * * *; and * * * that the plaintiff * * * was not qualified to determine the value of said property or to judge as to the cost of repair and remodeling * * *, and was not aware of their falsity * * *, and that she was entitled to rely upon said representations * * *, and that in reliance upon the aforesaid representations * * *, and as a direct result thereof the plaintiff * * * was induced to and did purchase the aforesaid property, and * * * that the aforesaid representations * * * were material representations, then in such circumstances * * *, you are instructed that your verdict should be in favor of the plaintiff and against the defendants."

Plaintiff's instruction No. II immediately followed and informed the jury that, if it found the issues for plaintff as submitted in instruction No. I, plaintiff's actual damages were to be assessed at such sum as the jury found the issues for plaintiff as submitted in difference between the actual value on February 8, 1957, of said property and the price paid by plaintiff for said property.

Defendant contends the instruction is reversibly erroneous for failure to require a finding that plaintiff suffered damages as the proximate result of the alleged fraud; citing, among others, Lammers v. Greulich, Mo., 262 S.W.2d 861, 864 [3, 4]; Banta v. Union Pac. R. Co., 362 Mo. 421, 242 S.W.2d 34, 42 [10]; Sides v. Contemporary Homes, Mo.App., 311 S.W.2d 117, 122.

The instruction does not expressly require a finding that plaintiff suffered damage by reason of the submitted fraud and is defective and subject to criticism. However, Duffy v. Rohan, Mo., 259 S.W.2d 839, 841 [1–3], states: "Instructions must be read and construed together. West v. St. Louis Public Service Co., 361 Mo. 740, 236 S.W.2d 308, 313 [10, 11]. Where a verdict-directing instruction is 'merely indefinite, ambiguous, or misleading, standing alone, and these defects are corrected by other instructions so that when all are read together the law of the case is sufficiently stated, then the error in the one instruction is not reversible.' State ex rel. St. Joseph Belt Ry. Co. v. Shain, 341 Mo. 733, 108 S.W.2d 351, 355 [1, 2]. And, where the instructions are read together 'and where, taken together, they do contain a complete exposition of the law and cover every phase of the case, a verdict obtained thereon will be sustained, although some of the instructions taken separately may be incomplete and open to criticism.' Higgins v. Terminal R. Ass'n of St. Louis, 362 Mo. 264, 241 S.W.2d 380, 387 [18–20]." For a more complete development of the subject, with citation of authorities, see McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S.W.2d 37, 40 [6–10]; McDaniel v. McDaniel, Mo., 305 S.W.2d 461, 467 [6, 7].

Said instruction was in the conjunctive throughout. The master element was the fraud resulting from known material false representations that the reasonable market value of the property was not less than $16,-

000 and that it was a good investment at that price, and that reliance upon such false representations induced plaintiff to purchase. It is difficult to perceive of a juror, upon finding the facts therein submitted, arriving at any conclusion other than that plaintiff suffered damages as a proximate result of the submitted fraud. All the evidence was that plaintiff purchased the property for $16,000. Robert Woodson testified he considered the property worth $16,500 on February 8, 1957, and so stated to plaintiff. In this state of the record, we think the requirement of plaintiff's suffering damage, although not expressly stated, was indefinitely expressed in the required finding that plaintiff purchased in reliance upon and as a direct result of a known material false representation that the reasonable market value of the property was not less than $16,000, and that this was made definite by plaintiff's instruction No. II that her actual damages were to be assessed at the difference between what plaintiff paid for the property and its actual value, determined from the evidence, on February 8, 1957, which, so far as here involved, is in accord with instruction No. V, given on behalf of defendants.

■ We are admonished not to reverse a judgment unless we believe error was committed by the trial court against the appellant, materially affecting the merits of the action. Section 512.160, subd. 2 R.S.Mo. 1949, V.A.M.S. The trial court did not consider the instruction prejudicially erroneous. When plaintiff's instruction No. I is considered in conjunction with the other instructions, we think it could not have been misunderstood by or that it misled the jury.

We overrule defendants' contention.

■ There is ample evidence to support a finding that Robert Woodson intentionally and wrongfully, without just cause or excuse, made the false representations submitted in instruction No. I to plaintiff, and

defendants' contention that plaintiff failed to make a submissible case on exemplary damages is not well taken. Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083, 1088 [11], states (omitting citations): "[T]he courts of this state seem now to be committed to the proposition that in cases of fraud and deceit punitive damages may be awarded where legal malice is present. * * * Moreover, by legal malice the courts have in mind simply the accepted theory of the intentional doing of a wrongful act without just cause or excuse, and not the necessity for the showing of any spite or ill will, or that the particular act was willfully or wantonly done. * * *" See cases there cited and, among others, Acy v. Inland Security Co., Mo. App., 287 S.W.2d 347, 352 [10]. Defendants' cases are distinguishable on the facts. Walker v. Huddleston, Mo.App., 261 S.W. 2d 502, 507 [6, 7]; Zumwalt v. Utilities Ins. Co., 360 Mo. 362, 228 S.W.2d 750, 756 [8]; Nixon v. Franklin, Mo., 289 S.W.2d 82, 90 [15].

■ Defendants say the italicized words in plaintiff's exemplary damage instruction gave the jury a roving commission. We quote that part of the instruction (No. III) material here:

"You are instructed that if you find the issues in favor of the plaintiff as submitted in Instruction No. I, then, in addition to any award of actual damages which you may make, if you further find and believe from the evidence that *the misrepresentations as made by the defendants*, if so, were willful and malicious, you may allow to plaintiff such exemplary or punitive damages * * *."

Defendants cite Zemlick v. A. B. C. Auto Sales & Inv. Co., Mo.App., 60 S.W.2d 649, 651 [2, 3]; Pogue v. Rosegrant, Mo., 98 S.W.2d 528, 533 [13]; Luikart v. Miller, Mo., 48 S.W.2d 867, 871. In each of said cases plaintiff's punitive damage instruc-

**10**

tion failed to specify what representations or acts of the defendant authorized a recovery for punitive damages when there was evidence in the case of representations or acts which would not authorize a recovery for punitive damages. In the Luikart and Zemlick cases plaintiffs went to the jury on measure of damage instructions only. The instant plaintiff's instruction was predicated upon a finding of the issues submitted in instruction No. I in favor of plaintiff; and the jury found "that the defendant Robert L. Woodson knew that the plaintiff, Mrs. Shepherd, was relying upon him to find investment real estate on her behalf," and that plaintiff "was entitled to rely upon said representations," and consequently embraced specific representations authorizing a recovery for punitive damages if made in the circumstances set forth in the Jones case, supra, which we have hereinbefore held was a question for the jury. It is not to be presumed that the jurors violated their oaths and decided the case other than on the evidence adduced and the law as declared in the instructions of the court. The correctness of an instruction is to be determined from its construction as a whole and not from a construction of a part isolated from its context. Sauer v. Winkler, Mo., 263 S.W.2d 370, 374 [2]; McDill v. Terminal R. R. Ass'n, Mo., 268 S.W.2d 823, 828 [6]. Defendants' cases do not establish error.

The judgment and decree is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.